## W. H. Clopton vs. Adrienne Spratt et al.

1. **Principal and Surety:** *Release of surety by action or non-action of creditor.*
It is well settled that no mere indulgence by the creditor towards the principal debtor will release the surety, provided the creditor does not by any affirmative act diminish the value of any security that he may have, or tie up his own hands against the principal debtor, or release any claim he may have acquired against the property of the latter.

2. **Same:** *Property of principal debtor held as collateral.   Claim against third persons held as collateral.*
The principle that non-action or passiveness on the part of the creditor will not release the surety, applies as well to outside property of the principal, deposited or pledged as additional security for the debt, as it does to non-action upon the original obligation.   The rule is the same as regards claims against third persons, deposited by the principal debtor as additional and collateral security for the debt.   As to such collaterals, in the absence of special circumstances making prompt action a duty, no mere 'laches, short of such as will cause a bar of the statute of limitations, will release the surety on the original obligation.

3. **Same:** *Non-action and improper action as to the collateral securities.*
While indulgence and passiveness by the creditor with regard to collateral placed in his hands by the principal debtor will not release the surety, yet if, by any improper or unskillful dealing with such collateral, he impairs its value, or if he so treats it as to make it his own, the surety will be, *pro tanto*, released.

5. **Pleading:** *Duplicity.*
A plea, setting up improper action by the creditor with regard to collateral placed in his hands, is not made double because it details also that the creditor for a long time forebore to take any action, whereby loss accrued.   Both averments present but a single issue.   Such a plea is bad for duplicity when

coupled with an allegation that the creditor had promised, but failed, to bring suit on the collateral.

6. BANKRUPTCY OF PRINCIPAL: *Release of surety.*

When the principal debtor is adjudged a bankrupt, a failure by the creditor to present his claim for a dividend does not release the surety.

ERROR to the Circuit Court of *Monroe* County.

Hon. B. B. BOONE, Judge.

Defendants in error brought their suit in the circuit court of Monroe county, on February 12, 1873, on the following writing obligatory, to wit:

"ABERDEEN, *May 14, 1866.*

$6,663.50.    One day after date we, or either of us, promise to pay Elisha D. Prewett, or bearer, guardian of Adrienne and Alwilder Ewing, six thousand six hundred and sixty-three 50-100 dollars, with interest at eight per cent. per annum, value received.    Witness our hands and seals.

SAMPSON GATHING. [L. S.]
WM. H. CLOPTON.  [L. S.]"

On this note was credited, March 23, 1867, $1,296.65; on May 30, 1867, $100, and on May 24, 1869, $2,135.

The 1st plea is general issue; 2d, payment. The 3d plea by Clopton sets up, substantially, that he is only surety, and that Gathing, the principal, delivered to Prewett, after the execution of the note sued on, two land notes, each for $1,600, on T. J. Randle, for purchase money of land described in the plea, which two notes were secured by vendor's lien on about 250 acres of land, as collateral security for the payment of the note here sued on; that the land was worth about $5,000; that if proper proceedings had been had within a reasonable time by Prewett, as he was bound to do, on the note of Randle and against the land, it would have paid off the note here sued on; but that Prewett, the guardian of plaintiffs below, wrongfully retained said collateral notes, and wholly and wrongfully failed, neglected, and refused to enforce collection thereon, whereby the lien was impaired and damaged to the sum of $4,500.

The 4th special plea by Clopton is substantially the same,

and, further, that after the land had become impaired as a. collateral, plaintiffs below, on October 5, 1872, instituted proceedings against *part only* of said land to enforce the lien, omitting ten acres, and all the buildings, tenements, and. improvements necessary for the whole tract of land, by reason of which omission the notes and the lien by which they were secured were greatly damaged, impaired, and deteriorated in. value, etc.

The 5th special plea by Clopton in substance is that. Gathing, the principal, has been adjudged a bankrupt, and. that Prewett, the holder of the note here sued on, neglected,. failed, and refused to file and present the note here sued on for *pro rata* distribution, according to. law, etc.

To the 3d, 4th, and 5th pleas a demurrer was filed, assigning: to 3d plea:

1. The facts stated are no defense to the action.

2. The facts stated do not show such neglect or omission of duty as will discharge the surety, Clopton.

3. The facts stated do not amount to negligence or omission of duty.

4. Because it is not averred that the surety, Clopton, gave notice to the plaintiffs, or the holder of the note sued on, to proceed to enforce, by suit or otherwise, the collection of the notes transferred as collateral.

5. It is not averred in said 3d plea to what extent or amount the notes transferred as collateral security have or had depre-- ciated in value, because it is not averred that plaintiffs did any act to impair the security.

To the 4th plea the causes assigned are all the above causes to the 3d plea, and—

6. The 4th plea is double, in this : that it sets up the delay of plaintiffs in enforcing the lien on the notes transferred as col- lateral security, and the depreciation of the lien, and also the negligence of plaintiffs in enforcing said lien.·

7. It is not averred in said 4th plea that. the omission of the ten acres, upon which was located the improvements, from the·

· decree of sale was from the fault or neglect of plaintiffs or their agent.

· 8. The facts stated do not amount to neglect or omission of duty.

9. Said plea is insufficient in law.

To the 5th plea the causes assigned are :

1. The facts averred are no defense to the action.

2. Failure of plaintiffs to prove their claim in bankruptcy is not a discharge of the surety.

3. It is not averred that the surety, Clopton, gave notice to plaintiffs to proceed in bankruptcy against the estate of the principal of the note sued on.

The demurrer was sustained to the 3d, 4th, and 5th pleas. Leave was granted, and the pleas were amended. Demurrers were again filed, and to some of the pleas sustained and to some overruled.

Verdict and judgment for Gathing, and against Clopton, for $3,473.66, damages $594.04, and the case comes to this court · on writ of error.

The following are assigned for error :

1. The court below erred in sustaining the demurrer of the plaintiffs to defendant's special plea, No. 3.

2. In sustaining demurrer of plaintiffs to the special plea of ·Clopton, No. 4.

3. In sustaining demurrer to 5th special plea.

4. The court below erred in sustaining Clopton's special plea, No. 6.

5. In sustaining demurrer to 7th plea.

6. In sustaining demurrer to 8th plea.

7. In rendering final judgment against defendant, Clopton.

*Baxter McFarland*, for plaintiff in error :

Calls in question the correctness of the action of the court in sustaining the demurrers and in rendering final judgment, and, in support of his position, cites the following authorities, to wit: Butler *v.* Capel, 2 Sim., 457 ; Williams *v.* Price, .1 Sim. & St., 297 ; Hayes *v.* Ward, 4 Johns. Ch., 123 ; Baker

·v. Briggs, 8 Pick., 122 ; Commonwealth v. Miller, 8 S. & R., 452 ; Lichtenthaler v. Thompson, 13 ib., 157 ; Commonwealth v. Haas, 16 ib., 252 ; Nixon v. Lyell, 5 Hill (N. Y.), 466 ; *Ex parte* Mure, 1 Coxe, 63 ; Mayhew v. Crickett, 2 Swanston, 193 ; Harberton v. Bennett, 1 Beatty's Irish Ch., 386 ; Law ·v. East India Company, 4 Ves., 824 ; Goodlowe v. Clay, 6 B. Mon., 236 ; Beale v. The Bank, 5 Watts, 529 ; 2 Am. Lead. ·Cases, 257–263 ; Cooper v. Wilcox, 2 Dev. & Bat. Eq., 90 ; Dixon v. Ewing, 3 Harmond, 280 ; 2 Am. Lead. Cases, 184, 185 ; Chamberlain v. Delarine, 2 Wilson, 353 ; Scroeppel v. Shaw, 3 Comst., 446 ; Philbrooks v. McEwen, 29 Ind., 347 ; ·Currie v. Whitney, 2 Johns., 433 ; Patcher v. Sprague, ib., 462 ; Strong & Undall v. Smith, 3 Caines, 160 ; Gould's Pl., ch. 8, p. 419, § 1 ; p. 420, § 4 ; p. 423, § 9 ; ib., ch. 7, § 51, p. ·407 ; 3 Term Rep., 337 ; 1 Saund., 337.

*Houston & Reynolds*, for defendants in error :

The questions involved in this case are raised by the demurrers of defendants in error to the 3d, 4th, 5th, 6th, 7th, 8th, and 9th pleas of Clopton, plaintiff in error.

The mere indulgence at the will of the creditor, however long or whatever may be its consequences, will not operate to discharge the surety.   This rule is equally applicable, whether the indulgence is extended towards the principal debtor or towards a third person liable to the creditor upon a collateral ·security.   1 Story's Eq., § 325 ; 3 Comst. (N. Y.), 446 ; Philbrook v. McEwen, 29 Ind., 347 ; Land v. Brevard, 3 Strobh. .Eq., 59 ; Hampton v. Levy, 1 McCord's Ch., 67 ; 4 S. & M., 165, 172 ; 11 ib., 181 ; 12 ib., 458 ; ib., 533 ; 39 Miss., 142 ; 3 Ala., 409 ; 1 ib., 23 ; 18 ib., 641 ; Hooks v. Banks, 8 ib., 580 ; Johnson v. Planters' Bank, 4 S. & M., 165 ; Cohea v. ·Coms. of S. Fund, 7 ib., 437.

CHALMERS, J., delivered the opinion of the court.

The case turns upon the sufficiency of the several pleas filed by appellant, Clopton, and upon the rightfulness of the action ·of the court in sustaining demurrers thereto.   The pleas are

quite numerous. They set up, in various forms, that Clopton was only surety on the note sued on for defendant, Gathing; that, after its execution and delivery to the guardian of these plaintiffs, who were then minors, Gathing, the principal debtor, delivered to said guardians, as collateral security for its protection, the notes of one Randle, due to Gathing for land sold by him to Randle; that these notes, thus delivered as collateral, were liens on the land sold; that they were sufficient to have paid off the note sued on, and that, if plaintiffs' guardian had proceeded to collect them within a reasonable time, they could and would have been collected in full, and would thus have almost, if not altogether, extinguished the note sued on. It is then averred that plaintiffs' guardian held said notes for a long time, without any attempt to collect them, and that during this period the land greatly depreciated in value, to such an extent that there was a loss sustained on the collateral to the amount of $4,500. It is further averred that when said guardian did institute proceedings to collect the collaterals, by a sale of the lands upon which they constituted a lien, he omitted to embrace in his bill for that purpose ten acres of the land, upon which were situated all the improvements, so that, upon the sale of the land, the value thereof and the product of the notes were very greatly impaired and diminished.

These facts are set up by the pleas as constituting a release of the surety (appellant) on the note sued on, to the extent of the loss sustained on the collaterals.

It will be observed that this claim rests upon two grounds:

1. That the surety is released because of the forbearance and inaction of the holder of the collaterals.

2. That he is released because of the omission of the ten acres of land in the proceeding ultimately instituted, and by reason of the impairment of the value of the collaterals thereby produced.

If any principle of law can be considered as well settled in this state it is that no mere forbearance or non-action on the

part of the creditor towards the principal debtors will release
the surety.   It is announced in almost every volume of our re-
ports, and can need no citation of authorities.   It is fully con-
ceded by counsel for appellant, but it is insisted that it applies
only to forbearance or passiveness in the pursuit of property
belonging to the principal in person; that it does not apply to
claims upon third persons which have been turned over by the
principal debtor as collateral.   As to these it is said that a
wholly different rule prevails, and that the law demands, if not
prompt activity, at least that there shall be no unseemly delay
in realizing upon such collateral.   In other words, the idea pre-
sented is that, while it requires some act of commission towards
the property of the principal debtor in order to release the
surety, mere acts of omission towards collateral claims against
third persons will have that effect.   As to one, non-action is
permissible; as to the   other, diligence, it is insisted, is
required.

The earnestness and zeal, and, we would add, the ability with
which this view is pressed by counsel have induced us to give
it the most attentive consideration.   It seems to find counte-
nance in a few cases, and is stated by the American authors of
the notes to the Leading Cases in Equity to be the established
rule.   In the notes on the leading case of Rees v. Berrington
it is said that the principle of diligence holds good " as to every
right of action against third persons which a debtor transfers
to a creditor on account of the debt."   In every such case neg-
ligence, though passive, will operate as a defense to a subse-
quent suit for the debt itself, although it is not always easy to
determine the precise point at which negligence begins.   3 Lead.
Cases in Eq. (3d ed.), 554.

In support of this assertion four cases are cited, two En-
glish and two American.   It was held in Williams v. Price,
1 Sim. & St., 581, that a direction to the sheriff not to
levy, under an execution which had been issued on a judg-
ment which had been assigned to the creditors as collateral
security, was a discharge *pro tanto* of the original debt.   Here

17

there was no surety, though it would seem that what would release a principal debtor should have the same effect as to a surety.

In *Ex parte* Mure, 2 Coxe, 63, the same result was held to follow from a mere delay in issuing execution upon a judgment transferred as collateral.

In Goodloe *v.* Clay, 6 B. Mon., one surety was held liable for contribution, at the suit of his co-security, for, loss occasioned by his negligence in enforcing, or his failure to enforce, a trust deed which the debtor had executed to indemnify the defendant surety, and which, of course, operated for the equal protection of his co-surety. The decision, which we think was right, rested upon the ground that the surety holding the indemnity forbore to press it until waste had occurred, out of tender consideration towards the family of the principal debtor, who was a brother-in-law, and this, too, after the principal debt had been paid off. By so doing he made himself liable to his co-surety, who was jointly protected by the collateral.

In Nixon *v.* Lyell, 5 Hill (N. Y.), 466, a debtor transferred to his creditor the note of a third person, which the creditor made his own by receiving part payment, and taking a new note for the balance, payable to himself at a distant day. It was held that the original debtor was thereby discharged. These are the four cases cited by the authors of the notes to the Leading Cases in Equity, *supra*.

It will be seen that none of them involve the rights of creditor and surety, and only one of them, to wit, *Ex parte* Mure, 2 Coxe, 63, was a case of simple inaction.

We have examined with care every case cited by appellant's counsel in support of the principle contended for, and we presume that his research has collected all the cases upon it deemed favorable by him. There is not one of them strictly in point; that is to say, there is not one of them where, in a contest between the creditor and the surety, it was held, in the absence of some special stipulation or circumstance requiring the creditor to proceed promptly on the collateral, that mere inaction

as to the collateral would release the surety.  Most of them were cases between the creditor and principal debtor, and in nearly all of them there had been some positive act of commission by the former whereby the value of the collateral had been impaired, or by his acts he had made it his own property. Where these features do not distinguish the cases, they are in states which do not adhere to the inflexible rules maintaining the liability of the surety that are to be found in our own and other states.  The principles which pervade our decisions, and which we think are certainly the soundest in view of our statutes, authorizing the surety, by notice, to compel the bringing of a suit and, by affidavit after judgment, to require the exhaustion of the principal debtor, may be thus stated :

The surety is in all respects equally bound with the principal for the payment of the debt, so far as the creditor is concerned. He can, therefore, never claim to be released without showing that he has been in some manner damaged by the act of the latter.  No mere laches on the part of the creditor, short of a bar of the statute of limitations, can have this effect, for several reasons.  In the first place the surety—who, in the eyes of the law, so far as the creditor is concerned, is as much an original debtor as his principal—is himself always in default and guilty of laches, after the maturity of the debt, in not paying it off; secondly, he may at any time, by paying it off, become himself the owner of the original debt, as well as entitled to the control of all collaterals by which it is protected, or he may compel the creditor to sue and exhaust the principal, or he may, before the maturity of the debt, by bill *quia timet*, compel proceedings to collect the collaterals if he deems them likely to depreciate or be destroyed by lapse of time.  With all these remedies in his hands, why should he be allowed to sit still and do nothing, and then be heard to complain because his creditor has done the same thing?

The creditor, it is true, is his trustee of all securities placed in his hands for the protection of the debt, but surely he is no more bound to protect the surety than the latter, with the

same facilities, is bound to protect himself. The creditor discharges his duty when he takes care that no affirmative act of his shall either diminish the value of the security, or tie up his own hands against the principal debtor, or release any claim he holds against the property of the latter.

These principles find illustration, as before remarked, in almost every volume of our reports, and were quite recently fully considered and discussed in the opinion delivered in Wright v. Wall, Noble & Mobley (MSS.), a case stubbornly contested at the bar.

It makes no difference that the indulgence was extended as to outside property of the principal, delivered or mortgaged as additional security for the debt. The principle is the same. Inaction will not discharge the surety; impairment of value by act of commission will.

Thus, it was held in Commercial Bank of Manchester v. Payne, 6 S. & M., 38, that the bank was only bound to hold the collaterals deposited, impartially and justly, and if they were lost, without action on her part whereby the loss occurred, the surety was not thereby discharged.

In Smith v. Clopton, 45 Miss., 67, the surety sought a partial diminution of the debt, to the extent of the value of a horse upon which the principal debtor had given a mortgage to the creditor, and which had died, as was alleged, in consequence of the delay in enforcing the mortgage.

A demurrer to the plea setting up this defense was sustained in the court below and in this court. The force of these and other cases, in this and other states, is admitted by counsel for appellant, in so far as collateral pledges of the principal's own property is concerned, but it is insisted that the rule is different as to claims against third persons.

As before remarked, none of the cases relied on, clearly make this distinction. Why should there be any such distinction in principle? If the surety cannot be damnified by loss sustained through a failure to assert a right over property of the principal hypothecated for the debt, how can he be by

a failure to pursue a third person?    There can be no foundation in reason for such a distinction.    The confusion, we are sure, must have arisen from an erroneous conception of cases where the creditor has received and dealt with collateral in such manner as to make it his own.

In such event he of course releases not only the surety, but the principal also.    Of this class will be found nearly or quite all the cases relied on by appellant.

The exact point under discussion came before the court of appeals of New York, in Schroeppel v. Shaw, 3 Comst., 446, and before the supreme court of Indiana, in Philbrook v. McEwen, 39 Ind., 347, and by both courts was decided adversely to the surety.    The New York case is ably and exhaustively reasoned, and, after some review of the case relied on, the learned judge delivering the opinion of the court declares that the distinction sought to be raised between the conduct of the creditor with regard to the property of the principal debtor, and that in relation to claims against third persons, deposited as collateral, "must be regarded as unsustained by any adjudicated case."    This case is cited, and its conclusions stated to be the law, in Story's Eq. Jur., §§ 501, 639.

We conclude that the court below did not err in sustaining demurrers to defendant's pleas setting up the loss sustained on the collateral notes by reason of the diminution in the value of the land before the subjection thereof to the lien of said notes. The demurrers were improperly sustained to those pleas setting up the impairment of the value of the collateral by the mistake in the proceedings to enforce them, by which there were omitted from said proceedings ten acres of the land, including all the buildings and appurtenances.    This amounts to a positive act on the part of the creditor whereby the value of the collaterals have been impaired.    A creditor receiving collateral is bound, in enforcing it, to do so with all the care and legal skill necessary to insure a collection of its full value, and

if in attempting it there is a failure to accomplish this result, growing out of any negligence or want of skill on his part, the surety, and perhaps the principal debtor, will be *pro tanto* discharged upon the original obligation.

It is no answer to this position to say that the omitted ten acres are still left, and may be subjected by the surety. It is a fact, of which the court may take cognizance upon demurrer, that the omission to sell ten acres, including all the improvements on a tract of 250 acres, must greatly impair the value of that sold as well as of that remaining unsold. Especially must this be so when, as we are informed by the plea, the omitted portion constitutes the only place suitable for a curtailage upon the tract. To sell such a body of land in such manner that the arable portion shall contain neither improvements nor building spot, and the other portion shall consist of naught save the buildings and a few acres adjacent thereto, must very seriously impair the value of both parcels.

We do not think that the pleas setting up the omission of the ten acres are double in detailing the failure for a long time to bring suit upon the collaterals. Both circumstances are set up as working but one result, namely, the impairment of their value. This impairment of value is the single issue tendered, and all the recitals conduce to this single proposition.

There was no error in sustaining the demurrer to the plea setting up a release by reason of a failure to file the note sued on in the bankrupt proceedings of the principal debtor for the purpose of obtaining a dividend thereon.

Such failure does not release the surety. 4 S. & M., 165; 7 ib., 437.

There was no error in sustaining demurrers to the pleas setting up the promise of plaintiff's guardian, through his attorney, Reynolds, to bring suit on the collaterals, and his failure to do so, as constituting a release. There is no allegation that defendant demanded or required such suit to be brought. Moreover, the plea is double in combining an alleged

release growing out of the promise, and a diminution in the value of the collateral by the omission to bring suit earlier, thus tendering a double issue.

It is believed that the proper disposition of the several demurrers to the various pleas has been sufficiently indicated. For the error noticed above, in the disposition made of those setting up the omission to sell the ten acres of land, the cause is reversed and remanded.