## Bank of Hickory Flat *v.* Crawford.

### [96 South. 100. No. 23237.]

PRINCIPAL AND SURETY. *Failure of creditor to file trust deed to preserve lien will not release surety on note secured thereby.*

> It is the settled law of this state that mere nonaction by the creditor in resorting to the property of the principal debtor, and failing to take some action which would impress a lien upon the property of the principal debtor, does not release the surety. Therefore the mere neglect to ·file a deed of trust for record so as to preserve the lien will not operate to release the surety. *Pickens* v. *Finney,* 12 Smedes & M. 468, and other cases cited.

APPEAL from circuit court of Benton county.

Hon: B. N. Knox, Special Judge.

Suit by the Bank of Hickory Flat against E. J. Crawford. From a judgment for defendant, plaintiff appeals. Reversed and judgment for appellant.

*Chas. Lea Crum,* for appellant.

Appellee cites *McMullen* v. *Hinkle,* 39 Miss. 142, which is also cited in the first brief for appellant. This case holds that the trust existing between the creditor and the surety only requires that the creditor "do no act which will impair any security which the creditor has by means of the principal's property." In this case the creditor

had a judgment lien on a slave belonging to the principal debtor which was sufficient to pay his judgment. The creditor applied this property to another debt and removed it from the state, which positive act on the part of the creditor was prejudicial to the surety as a misapplication of the principal debtor's funds, and the surety was thereby released. If the bank, in the case at bar, had accepted the deed of trust as security for the note sued on and had afterwards taken the two mules described in the deed of trust in payment of an unsecured debt due it and had carried the two mules beyond the reach of the surety, then the cases would be analogous. But the case at bar and the case of *McMulley* v. *Hinkle,* are not similar on the facts. In discussing the latter case, however, the court held that the creditor is only restrained from doing some act that will increase the liability of the surety, before the surety will be released. The bank of Hickory Flat is only criticized for inaction, or passiveness—not for any act that it did, but for what it did not do.

*Moore* v. *Gontain,* 8 So. 509, cited and quoted from by counsel for appellee gives no comfort to the contention of appellee, for it holds, that in the absence of an agreement to the contrary, "It has never been held that inaction by the creditor" (such as a failure to probate claim against a decedent's estate, enroll judgment against principal debtor, record a deed of trust, or prove claim against bankrupt debtor) "discharges a surety." It is not proven by the evidence, nor contended that the bank, in any agreement, obligated itself to record this deed of trust, which is admitted by Crawford to have been taken at his instance and for his protection as surety, and there is certainly no legal obligation requiring the bank to record it, as it was never considered by the bank as its property.

Mr. Kenneday for the appellee insists, at the bottom of page 5 and top of page 6, that "active interference" of the creditor "does not always mean physical locomotion. Does not always mean some act of commission. It is but passive interference to allow a note to remain in the vaults

until it expires by limitation, etc." He illustrates that "by passive interference one loses the right to collect an insurance policy, or a claim against a common carrier." In reply to this I would suggest that it is not required that a creditor holding such collateral security should institute suit on it unless he has agreed to do so. and his failure to sue before the collateral security is barred, would not release the surety, for the reason, that the surety could pay off the debt, as he had obligated himself to do, be subrogated to the rights of the original creditor, take full charge of the collateral and protect himself in such way as the original creditor could do in the first instance. See *Pickens* v. *Finney,* 12 S. & M. 468; *Clopton* v. *Spratt,* 52 Miss. 251. I call the especial attention to middle paragraph of the opinion in the last cited case on page 259.

The case of *Interstate Trust & Banking Co.* v. *Young,* 135 La. 465, 65 So. 611, cited by appellee (page 6) deals entirely with the application of payments regulated by articles 2164 and 2166 of the Louisiana Civil Code, and has no bearing by analogy, or otherwise, on the principles here being argued in the case at bar.

On page 6 of appellee's brief, counsel states: *"Clopton* v. *Spratt,* held that the omission on the part of the debtor to sell ten acres of land held under mortgages for security of his debt amounted to a positive act on the part of the creditor whereby the value of the collateral has been impaired." I most respectfully deny that this case holds that the omission to sell this ten acres affected a release of the surety, but on the contrary, the able opinion by CHALMERS, J., states: "If any principle of law can be considered well settled in this state it is, that no mere forbearance, or non-action on the part of the creditor towards the principal debtors will release the surety." What the court did hold with reference to the ten acres that was not sold was this: That the positive act of the creditor in dividing the land in such a way as to diminish its value as security would operate to release the surety to the ex-

tent of the diminution. It was not the failure to act on the part of the creditor that was held to operate as a release of the surety, but the improper action in dividing the land so as to impair its market value. Improper action on the part of the creditor will operate to release the surety, but no mere indulgence, omission to act, or passiveness, failure to register claim against the estate of principal debtor, prove claim against bankrupt estate, failure to enroll judgment against debtor and such like, will in any way release the surety.

*Margold* v. *Barlow,* 61 Miss. 593, cited and relied on by appellee has no application to the case at bar. In this case the court merely holds that in order that a grantee may receive the benefit of constructive notice to subsequent purchasers he is required only to "file" the instrument with the clerk for record, and if the clerk fails to record it, the grantee will get the same benefit as though it had been properly recorded. This decision does not tend to determine the liability of surety for failure of the principal debtor to record a deed of trust held as additional security.

If it is negligence to fail to record a deed of trust held to secure an indebtedness, then I answer that the bank did not hold this deed of trust as its own, and the negligence of the appellee who volunteered to act and have himself appointed as trustee, and had the deed of trust executed for his own personal protection as surety, cannot be imputed to the bank where the appellee failed himself to have the deed of trust promptly recorded, paid no fee to the bank for its recordation, and did not request the cashier of the bank to record it for eleven months after its execution. For all the cashier of the bank knew it may have been agreed between the appellee and Allen, that appellee would not have it recorded, as agreements of this kind are often made, and the bank was not relying upon it as any part of its security.

Counsel for appellee ignores entirely the assignment of error No. 2. That the court below erred in sustaining the

132 Miss.—23

objection to the testimony of Harmic Henry; that the bank did not accept the deed of trust given by Allen as security for payment of the note sued on. The only issue that the court below allowed submitted to the jury was whether the bank accepted the deed of trust as a part of its security for the payment of this note, and the testimony of Mr. Henry, cashier at the time of the transaction, and only witness for plaintiff who could testify on this point and who swore that it was not so accepted, should have been allowed to remain before the jury with all its force and weight. The exclusion of this testimony was fatal error, for it was obliged to have determined the verdict against the appellant.

We most respectfully submit that the judgment in this case should be reversed and a judgment here for the appellant, as contended for in appellant's first brief.

*LeRoy Kenneday,* for appellee.

There is no conflict in the evidence. Appellant, through its cashier, H. Henry, admitted his case out of court. Appellant predicates its right to recover on the sole ground, that appellee, Crawford, owned the trust deed; that it was given to him, and not to the appellant, but nowhere denies that appellant took charge and possession of the trust deed, placed it in its vaults and as effectually under its control as was the money belonging to the appellant bank; and too, it will be observed that appellee is the trustee, in said trust deed. Whoever heard of the trustee in a deed of trust being the owner thereof? The trust deed is regular on its face, recites the fact that it was given to the appellant bank, to secure the identical note sued on in this case. Appellant is therefore estopped to deny the solemn recitals of the trust deed. Miss. Dig. v. 2, Sub. Estoppel, sec. 52, etc.; Herman Estoppel, sec. 1038 to 1045, inclusive; 27 Cyc. pp. 1153, 1154, and notes, etc. By accepting said trust deed, placing it in its vaults, thereby exercising exclusive control and ownership over the trust

deed, appellant assumed the responsibility of preserving the security intact. *McMullins case,* 39 Miss. 142. The law of the case seems to have been fairly dealt out to the parties litigant, the jury was fully instructed on every point raised by appellant in the trial of the case in the court below.

Not only did the appellant bank assume to own and control the trust deed, in the most self-assertive manner possible (by locking it into its vaults), which as effectually tied the hands of appellee, as if appellant had refused, outright to allow him to place the trust deed on record, and too, it must be borne in mind that appellee was made trustee, in said trust deed and this, at the instance of appellant, as such trustee, Crawford was powerless to act, except at the request of the *cestui que trust;* but appellee seeing the danger of losing out, seeing the property included in the deed to bank taken away by Edwards & Son, under their second trust deed, fairly begged this cashier, Henry, to allow him to contest Edwards' right to said property and Henry flatly refused to allow it, and this is not denied anywhere in the record, and thus the appellee was tied, and "hog-tied" at that; and although Mr. Henry testified on the trial of this case, he most signally failed to even deny this, or anything else charged against his bank affairs, by appellee, etc. Appellant contends also that it was the duty of appellee to have seen to it, that the trust deed was properly recorded; this we gainsay, and most positively deny. In the case of *Margold* v. *Barlow,* 61 Miss. 593, the court says: "A grantee must put his deed in condition for being recorded, and must lodge it at the proper place for record." That is all that is required of him. No more just application of this rule could be imagined than is presented by the record in this case. *Clopton's case,* 52 Miss. 251.

The indorser of a note secured by trust deed, has the legal right to have the proceeds of the property thus incumbered, applied to the note so indorsed by him, appellee's promise to pay the note was in law conditioned

upon the note and trust deed being transferred to him, upon his paying the same, and upon said note being transferred to him, not shorn of its securities, but accompanied by all of them. This is not simply the implied duty of the appellant, in dealing with collaterals, but in this case, it was the express agreement of the parties to the contract. Sten. notes, r. p. 14, above referred to. See 135 La. 465, 65 So. 611. Contracts of a surety are to be strictly construed and no liability by implication, *Lipscomb's case,* 38 Miss. 476; *Greer's case,* 57 Miss. 575. In *Chaffe's case,* 58 Miss. 544, where property mortgaged is sold to an innocent purchaser in violation of agreement so that the mortgaged debt is lost to the surety, he has the right to be released from the full amount of the mortgaged property. To like effect is the holding of this court in *Barkwell* v. *Swann,* 69 Miss. 907, 13 So. 809: "A creditor who takes a collateral security for his debt is bound to hold it impartially and justly, and if it be lost by his negligence or misconduct, the surety will be released from so much as might have otherwise been realized from such collateral." *Payne's case,* 6 S. & M. 24; *Chism's case,* 73 Miss. 410, 19 So. 210. This brings us to a consideration of the principal case, *Clopton* v. *Spratt,* 52 Miss. 251, in which it was held that the omission on the part of the debtor to sell ten acres of land under mortgage for the security of his debt amounted to a positive act, on the part of the creditor whereby the value of the collateral has been impaired. This is precisely our case as regards the doctrine of active or passive interference, nothing was done in this case, except the trustee failed to sell the ten acres of land included in the trust deed.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, Crawford, and R. W. Allen gave the appellant bank a note for one hundred eighty-one dollars and fifty cents and the note becoming due and unpaid, and Allen having absconded, suit was brought against Craw-

ford on this note in the justice of the peace court and appealed to the circuit court, where there was a judgment in favor of the appellee, Crawford, from which this appeal was prosecuted.

It appears that the defense of Crawford is based upon a failure of the bank to have a deed of trust recorded which was executed by Allen conveying certain personal property in trust to secure the note sued on. It appears from the record that the bank had refused to take the deed of trust on the said personal property, but told Allen that if he would get Mr. Crawford to sign the note with him that the bank would let him have the money. Allen sought Mr. Crawford to get him to sign the note; Mr. Crawford did so, a deed of trust being taken on the property mentioned in the deed of trust, and said deed of trust was left with the bank with the note. The bank failed to have this deed of trust recorded, and Allen subsequently gave a second deed of trust on the property, which said deed of trust was duly recorded, and default having been made on the second deed of trust, the holder thereof advertised the said property for sale. Thereupon Mr. Crawford went to the bank and on inquiry found the deed of trust had not been recorded and there was nothing left out of the proceeds of the sale under the second deed of trust to pay the note here sued on. There was a difference between Mr. Crawford and the cashier of the bank as to whether the deed of trust was taken for the benefit of the bank, or whether it was taken for the security of Crawford; the cashier testifying that the bank did not accept the deed of trust and that it was filed with Mr. Crawford's papers at the bank and that it was his deed of trust and that Mr. Crawford did not request it to be recorded, that it was Mr. Crawford's duty to see that said deed of trust was recorded; the contention of Mr. Crawford being that the deed of trust was taken as security and filed with the bank, and that it was through the bank's negligence in this respect that the property was lost and the rights of the defendant prejudiced, and that he (Crawford) was there-

by released from his obligation as a signer of the note be-
cause of such negligence and default on the part of the
bank. The bank requested a peremptory instruction which
was refused and which constitutes one of the assignments
of error.

It is the settled law of this state that mere nonaction
by the creditor in resorting to the property of the prin-
cipal debtor for failing to take some action which would
impress a charge upon the property of the debtor does
not release the surety. In *Pickens* v. *Finney,* 12 Smedes
& M. 468, it was held that forbearance or mere passive-
ness on the part of the creditor will not release the surety.
In that case the creditor had obtained a judgment against
Cook for four hundred fifty dollars debt, and two hundred
two dollars damages; an execution on which was bonded
with complainant as surety, and the bond forfeited on the
20th of October, 1845, at which time Cook had property
in his possession sufficient to have paid this judgment, and
all of an older date, and had Finney enrolled his judg-
ment so as to have preserved the lien, the money thereon
could have been made out of the property of Cook; but by
omitting to do so Finney gave younger judgments, a list,
of which was set out in the bill, priority of lien, and all
of Cook's property was taken by executions on them, and
sold for more than enough to pay Finney's judgment and
all older judgments. The court held that the failure to
enroll the judgment and thus preserve the lien did not
release the surety. In the case of *Johnson* v. *Planter's
Bank,* 4 Smedes & M. 171, 43 Am. Dec. 480, it was held
that if a creditor who holds a note against a principal and
sureties fails after the death of the principal to present
it to the administrator within the time prescribed by law,
the sureties are not thereby discharged. Various other
applications of the doctrine have been made in the decis-
ions of this court. See *Caruthers* v. *Dean,* 11 Smedes &
M. 178; *McMullen* v. *Hinkle,* 39 Miss. 142; *Clopton* v.
*Spratt,* 52 Miss. 251; *Wright* v. *Watt,* 52 Miss. 634; *John-
son* v *Machinery* Co., 104 Miss. 217, 61 So. 178, 62 So. 4.

· The authorities in other states are divided upon the proposition as to whether neglect to file an instrument for record will operate to release a surety as will be shown by case note to *First National Bank* v. *Kittle,* 37 L. R. A. (N. S.) 699 (W. Va.), in which case note Mississippi is lined up with the doctrine that the failure to file for record does not release the surety.

On the facts in this record we think the peremptory for appellant should have been given, and it is unnecessary to decide the other questions presented.

The judgment will be reversed, and judgment rendered here for the appellant.

*Reversed and judgment here for appellant.*