506 So.2d 241 (1986)
WEST POINT CORPORATION, et al.
v.
NEW NORTH MISSISSIPPI FEDERAL SAVINGS & LOAN ASSOCIATION.
No. 55449.
Supreme Court of Mississippi.
November 26, 1986.
Rehearing Denied May 13, 1987.
Robert G. Krohn, Price Krohn & McLemore, Corinth, Omar D. Craig, Terry Morris, Oxford, for appellants.
Clifford B. Ammons, W.F. Goodman, Jr., P.N. Harkins, III, George R. Fair, Watkins & Eager, Jackson, for appellee.
En Banc.
ROY NOBLE LEE, Presiding Justice, for the Court:
North Mississippi Savings & Loan Association (North Mississippi) filed its declaration in the Circuit Court of Lafayette County, against the West Point Corporation (West Point), John R. Young (Young), Gorden E. Brent (Brent), Woodford S. Lovejoy (Lovejoy), W.C. and Laura E. Hudson (Hudsons), and other parties seeking collection of a defaulted promissory note in the original amount of one hundred ninety-six thousand dollars ($196,000). At the conclusion of all the evidence, the lower court granted a directed verdict in favor of North Mississippi in the amount of one hundred thirty-nine thousand five hundred fifty-three dollars forty-six cents ($139,553.46), with interest at the rate of nine percent (9%) per annum, together with attorney's fees. The *242 total amount of the judgment was one hundred sixty-three thousand six hundred ninety-two dollars sixty-seven cents ($163,692.67). West Point Corporation, Lovejoy, Young, Brent, and Hudsons have appealed to this Court from that judgment.

Facts
On November 10, 1972, West Point executed a promissory note in the principal sum of one hundred ninty-six thousand dollars ($196,000) to North Mississippi, together with interest and attorney's fees. The monthly installments of nineteen hundred eighty-eight dollars five cent ($1,988.05) began on December 1, 1972, and were payable seriatim with the last payment being due November 1, 1987. As to Lovejoy, Young and Brent, the note contained the following condition and guaranty:
As a condition of the Corporate obligation evidenced by this Promissory Note, the undersigned individuals, in order to induce the lendor to advance the funds evidenced hereby, have agreed to and do hereby execute this Note as personal sureties for the prompt payment of this indebtedness by the Corporate obligor; with payment guaranteed, with the provision, however, that the responsibility of the undersigned personal sureties is limited to the principal obligation plus such lawful interest thereon as may be permitted to be charged to individuals under the laws of the State of Mississippi.
* * *
 PAYMENT GUARANTEED:
 /s/ WOODFORD S. LOVEJOY
 WOODFORD S. LOVEJOY
 /s/ JOHN R. YOUNG
 JOHN R. YOUNG
 /s/ GORDON R. BRENT
 GORDON R. BRENT
The note was secured by a deed of trust on a motel and motel property. Subsequently, the note and deed of trust were transferred to, and payment thereof was assumed by, other parties who are not involved in this appeal.
The appellants filed answers and set up numerous equitable affirmative defenses, and moved the court to transfer the cause to the Chancery Court of Lafayette County in order that those defenses could be presented. The lower court held that the Circuit Court properly had jurisdiction of the cause and denied the motion to transfer to the chancery court. At the conclusion of the evidence, the lower court entered judgment in favor of North Mississippi.

Questions

I. DID THE LOWER COURT ERR IN OVERRULING THE MOTION OF APPELLANTS TO TRANSFER THE CAUSE TO THE CHANCERY COURT?

II. DID THE LOWER COURT ERR IN STRIKING THE AFFIRMATIVE DEFENSES OF THE APPELLANTS?

A.
Stated differently, these assignments present the question of whether or not North Mississippi had the right to sue and recover in a court of law on the promissory note, without first proceeding to a foreclosure of the deed of trust. We are of the opinion that North Mississippi had the unconditional right to choose its forum for suit and to institute suit on the note alone for its collection, without resort to the deed of trust or foreclosure thereon. In 55 Am.Jur.2d Mortgages § 541 (1971), the general law is stated as follows:
While there is some authority for the view, and statutes to the effect, that an independent action on the mortgage debt or note is a bar to a subsequent foreclosure, and that a foreclosure is a bar to an action of law on the debt, the general rule, in the absence of a statute to the contrary, is that a creditor whose debt is secured by mortgage may pursue his remedy in personam for the debt, or his remedy in rem to subject the mortgaged property to its payment.
In Rea v. O'Bannon, 171 Miss. 824, 158 So. 916 (1935), the Court discussed the right of a promissory note holder to elect his remedy and stated:

*243 There is no inconsistency in the two remedies here available to Rea, receiver. He could pursue the foreclosure to conclusion, or, if he deemed it advantageous to himself, he could forego the foreclosure and proceed at law to collect his debt in the law forum... . There is no inconsistency between the legal and equitable remedial rights possessed by a mortgagee in case of a breach, and he may exercise them all at the same time, and resort to one is not a waiver of the other.
171 Miss. at 832, 158 So. at 918. See also Ramon v. Mitchell, 227 Miss. 360, 86 So.2d 315 (1956) and Cooper v. Mississippi Land Company, 220 So.2d 302 (Miss. 1969).
In Cooper, the Court cited Rea v. O'Bannon, supra, and held that the payees of corporate notes could sue on the note without resorting to the security of a deed of trust, and that the holder of the note had the right to forego use of the burdensome collateral. This Court approved their right to sue directly on the promissory note.
Since the appellee had the right to file and proceed with his suit on the promissory note in the Circuit Court of Lafayette County, it follows that the lower court did not err in declining to transfer the cause to the chancery court and in striking the equitable defenses filed by the appellants.

B.
Under Assignments I and II, appellants urge that they were entitled to rely upon the equitable defense of "impairment of collateral." Appellants cite no authority on facts comparable to this case in support of such a position. Huey v. Port Gibson Bank, 390 So.2d 1005 (Miss. 1980) and Hughes v. Taylor, 485 So.2d 1026 (Miss. 1986), have been brought to our attention as authority on "impairment of collateral" in the case sub judice. Neither case is applicable here.
Huey v. Port Gibson Bank, supra, involved a note executed in favor of Port Gibson Bank with collateral consisting of a security agreement on inventory, furniture and appliances. The bank failed to file a financing statement with the Secretary of State, which amounted to an unjustifiable impairment of collateral, thereby relieving the endorser of his obligation on the loan to the extent of collateral impaired. That case is distinguished from the case sub judice.
In Hughes v. Tyler, supra, collateral for the indebtedness was 1,256 acres of land. Without setting out the details, holder of the note, Hughes, executed a subordination releasing 776 acres of land and there was a substantial impairment of the collateral to Tyler, the debtor. Hughes is not similar to the present case.
On the other hand, in Kane v. Citizens Fidelity Bank & Trust, 668 S.W.2d 564 (Ky.App. 1984), the Court of Appeals of Kentucky held that there was no duty on the creditor to preserve collateral which was not in its possession, citing Commercial Credit Equipment Corp. v. Hatton, 429 F. Supp. 997 (N.D.Tex. 1977), at 1001, as follows:
[T]he imposition of such a duty flies in the face of commercial realities... . In addition to the practical problems involved in such a system, it would not appear to be sound public policy to encourage creditors and sureties to follow debtors about to insure that the value of collateral in their possession is not deteriorating.
To the extent that a surety feels insecure and believes a debtor is in default, he is always entitled to pay off the indebtedness, be subrotated to the right of the creditor, and then repossess....
In Federal Deposit Insurance Corp. v. Kirkland, 251 S.E.2d 750 (1979), the Supreme Court of South Carolina said:
As an additional sustaining ground, respondent contends that Code Section 36-3-606(1)(b) relieves him from liability. This section states that the holder discharges any party to the instrument to the extent the holder unjustifiably impairs any collateral for the instrument. Basically, respondent contends that collateral was impaired due to vandalism on the mortgaged property and a general decline in real estate values in the area. The referee correctly held that any damage *244 from vandalism or deterioration in values did not result from any act of appellant and, therefore, it was not responsible therefor.
251 S.E.2d at 752. See also Commercial Credit Equipment Corp. v. Hatton, supra.
We do not interpret Mississippi Code Annotated § 75-3-606 (1972), which deals with impairment of collateral, to impose a duty upon the mortgagee, in a mortgage covering real estate collateral, who is not even in possession of the real estate, to look after, care for, maintain and upkeep same. If that duty were imposed, it would be to the interest of the creditor not to take such collateral as security, but only rely upon makers, endorsers and sureties who, without doubt, were worth the amount of the note. American Bank of Commerce v. Covolo, 88 N.M. 405, 540 P.2d 1294 (1975), holds that a bank does not owe a fiduciary duty to its debtors and obligors under the UCC.
What a chilling effect such a duty would have on business. It would be prohibitive for lenders, even within the state, to keep up with, inspect, and maintain the collateral. It would hardly be feasible for lending institutions within this state to purchase notes secured by real estate mortgages in other states because of the cost, hardship and impossibility to inspect and maintain the collateral. Banks and individuals frequently loan money on promissory notes with endorsers, and, incidental to the note, take a mortgage on real property and without an inspection or title certificate. They could have problems if the impairment of collateral argument of appellants were adopted.

III. WAS WEST POINT AS MAKER OF THE NOTE PRIMARILY LIABLE ON THE NOTE?
The promissory note executed by West Point contained an unconditional promise to pay the note at definite times. Mississippi Code Annotated § 75-3-413 (1972), provides the following:
(1) The maker or acceptor engages that he will pay the instrument according to its tenor at the time of his engagement or as completed pursuant to § 3-115 [§ 75-3-115] on incomplete instruments.
* * * * * *
(3) By making, drawing or accepting the party admits as against all subsequent parties including the drawee the existence of the payee and his then capacity to indorse.
The liability of a maker on a promissory note is discussed in 2 Bender's Uniform Commercial Code Service § 5.01 (1984):
The maker's liability is said to be primary, using that term in a contractual, and not the suretyship sense. The Code actually omits the term "primary," but unfortunately refers to endorsers and drawers as "secondary parties." Thus, the Code implicitly applies the label "primary" to the other two contracting parties: makers and acceptors. Because the same terms, primary and secondary, are used with entirely different meanings with reference to suretyship obligations, confusion would be avoided by not using them at all.
What primary liability means in the case of the maker is that there are no conditions precedent to his liability. At the time stated in the instrument, he must seek out and pay the holder. Nothing more need be done before the holder's cause of action arises, and at least theoretically, the holder may proceed at once to a lawsuit... .
Obviously, the maker promises to perform (pay) as agreed when the maker issues the instrument. He does not undertake to pay according to alterations later made in his contract by someone else until he assents to them. Because of the preferred status of a holder in due course, he must pay such a holder even though there has been an alteration, but only according to this original contract; and he will not have to pay others at all if such changes are fraudulently made by holder.
Appellants cite Gilliam v. McLemore, 141 Miss. 253, 106 So. 99 (1925), which held *245 that the grantee of a deed of trust becomes primarily liable to the mortgagor because they had bound themselves and assumed to pay the mortgage debt of the grantor's mortgagors. However, Gilliam did not hold, or discuss, the liability of the original mortgagors-makers as to any obligation under a promissory note, and only related to the status of the mortgagor-maker under the deed of trust.
In Graham v. Anderson, 397 So.2d 71 (Miss. 1981), this Court held that an agreement by the grantee of mortgaged premises to assume and pay the mortgage debt does not release the grantor-mortgagor of the mortgaged premises from the liability for the debt. Graham followed Smith v. General Investments, Inc., 246 Miss. 765, 150 So.2d 862 (1963). In General Investments, suit was brought by the mortgagee for a deficiency judgment, after foreclosure sale against mortgagors and their grantees, who had assumed the mortgage debt. Suit was filed in the circuit court, which rendered judgment for the mortgagee against all the defendants. This Court, citing Gilliam, supra, held that the mortgagee in a suit for deficiency judgment could recover against the original mortgagor and its grantee, who assumed the debt. The Court said:
An agreement by the grantee of mortgaged premises to assume and pay the mortgage debt inures to the benefit of the holder of the mortgage. Hence a grantee who has thus assumed it incurs a personal liability to the mortgagee... . And since there was no agreement by Choctaw [mortgagee] to accept the grantee in place of the Hemphills [mortgagor-maker of the note] as the debtor, the assumption of a mortgage by Smith [grantee] did not deprive the mortgagee of any rights it possessed against the mortgagors, or relieve the latter from liability for the debt.
Moreover, a grantee, such as Smith, is not relieved of liability by conveying the property to a third person, whether in conveying he exacts, or neglects to exact (as here) a promise of assumption from his grantee.
246 Miss. at 770, 150 So.2d at 864.
White and Summers, Uniform Commercial Code § 13-7 (2d ed. 1980), sets forth liability of a maker on a promissory note:
The contract liability of the maker of a note is as easy to understand as the words "I promise to pay. .. ." Section 3-413(1) provides that the maker "engages that he will pay the instrument according to its tenor at the time of his engagement or as completed pursuant to § 3-115 on incomplete instruments." Thus, the maker's liability is unconditional and absolute; he is obliged to pay a time instrument "on the day after maturity" and a demand instrument "upon its date, or if no date is stated, the date of issue."
We are of the opinion that West Point's obligation is to pay the note as maker and that its status as principal was not affected. See § 3-413(1).

IV. ARE LOVEJOY, YOUNG, BRENT AND THE HUDSONS AS SURETIES, PRIMARILY LIABLE ON THE NOTE?
Mississippi Code Annotated § 75-3-416 (1972), states the following law:
(1) "Payment guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due, he will pay it according to its tenor without resort by the holder to any other party.
The guarantor's liability becomes indistinguishable from that of a co-maker since a guarantor waives presentment, notice of dishonor and protest and demand upon the maker of the promissory note. See Comment, UCC 3-416. Lovejoy, Young and Brent became sureties by guaranteeing payment of the note. Miss. Code Ann. § 75-1-201 (1972); Brent v. National Bank of Commerce of Columbus, 258 So.2d 430 (Miss. 1972); White & Summers, Uniform Commercial Code (2d ed. 1980), §§ 13-14.
*246 We are of the opinion that Lovejoy, Young and Brent are sureties on the promissory note on account of their guaranty agreement and that the Hudsons are liable on the promissory note pursuant to their assumption agreement. See Miss. Code Ann. § 75-3-415 and Official UCC Comment to § 3-415; Gilliam v. McLemore, supra; Smith v. General Investments, Inc., supra; and McLeod v. Building & Loan Ass'n of Jackson, 168 Miss. 457, 151 So. 151 (1933).
We have considered all other questions presented by the assignments of error and are of the opinion that there is no merit in them. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
WALKER, C.J., PRATHER, ANDERSON, and GRIFFIN, JJ., concur.
HAWKINS, P.J., and DAN M. LEE, ROBERTSON and SULLIVAN, JJ., dissent.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
West Point Corporation (West Point), a Mississippi corporation, and other individual sureties on a promissory note have appealed from a judgment on the note in favor of New North Mississippi Savings & Loan Association (North Mississippi) in the circuit court of Lafayette County.
In their answers the defendants pleaded affirmative defenses that North Mississippi had knowingly permitted the improvements on the real property given as security for the note to radically deteriorate, and they were entitled to be released. These defenses were struck by the circuit judge as irrelevant to the suit on the note. In my view the alleged affirmative defenses if proved would constitute valid defenses, and I would reverse and remand for development of the facts and ascertainment of the rights of the parties under all the provisions of the deed of trust.

FACTS
On November 10, 1972, West Point Corporation executed a note in the principal sum of $196,000 to North Mississippi, secured by a deed of trust on a tract of land on the West side of the United States Highway 45. The tract consisted of approximately 350 feet along the highway and 700 feet deep. An attractive motel and restaurant were constructed on this realty. Three officers of West Point, Woodford S. Lovejoy, John R. Young, and Gordon E. Brent, personally endorsed the note as sureties. In February, 1975, the property was conveyed to W.C. and Laura E. Hudson, who assumed the indebtedness. The Hudsons owned the property only a short while, conveying it June 12, 1975, to John E. and Patricia A. Ticer, who assumed the indebtedness. On December 5, 1975, the Ticers conveyed the property to Jack L. Martin, who assumed the indebtedness, and who apparently was acting for Guaranty Venture Corporation, a Minnesota corporation. On November 10, 1976, Guaranty Venture conveyed the property to Windsor Enterprises, Inc., a Mississippi corporation, which likewise assumed the indebtedness. All the transfers were with the approval of North Mississippi. The last payment on the note was made July 9, 1980.
Without any foreclosure, North Mississippi filed a declaration on the promissory note on June 23, 1981, in the circuit court of Lafayette County against all these parties. Only West Point, Lovejoy, Young, Brent, and Mr. and Mrs. Hudson filed answers.
When the motel was constructed, it had pleasant and comfortable facilities, including a swimming pool, attractive to the general public. By the time suit was filed the improvements were in total shambles, and worthless. Tornadoes would have wreaked no greater destruction. From the pictures in this record it appears the land would be worth more vacant than with the remaining clutter. The deterioration probably occurred after Windsor became the owner.
A copy of the deed of trust was attached to the pleadings. It requires the debtor to maintain the buildings in good repair and *247 not to permit waste, failing in which the beneficiary may make repairs and hold the debtor liable, may take possession of the property, or foreclose.
The answering defendants moved to transfer the cause to chancery court initially, which was overruled by the circuit judge. They then incorporated in their respective answers affirmative defenses that the creditor wilfully allowed gross waste and vandalism to radically devalue the property, and they should be released from the note to the extent of such impairment of the value of the property secured by the deed of trust.
The circuit judge also struck these affirmative defenses from the pleadings. The circuit judge was of the view that North Mississippi was not obligated to resort to the deed of trust, but could sue initially on the promissory note. The deed of trust was never considered.
There being no question as to the delinquency in payment, upon conclusion of the plaintiff's case, and rejection of profert of proof of the damage to the property, the circuit judge directed a verdict in favor of North Mississippi.
These defendants appealed.

LAW
We do not know the facts of this case pertaining to the loss and destruction of the improvements on the realty, nor do I suggest that this Court now pass upon the overall rights of the parties under this particular deed of trust. This remains to be developed at a trial considering the entire instrument. I address only one provision in the deed of trust and the consequences flowing from a particular kind of breach. Where that provision in the deed of trust states that failure to maintain the improvements in a good state of repair constitutes a default giving the holder the right to foreclose, and over a period of time there is a serious breach of this provision, of which the holder has actual notice and knowledge, yet declares no default and does nothing to protect or preserve the property against waste, deterioration or destruction, then to the extent of the impairment in value caused by his failure to take reasonable action to preserve the property a party secondarily liable on the promissory note for which the deed of trust is security, and who has no possession or control whatever of the secured property, is released.
This, as I view the pleadings, is the substance of the affirmative defenses filed by these defendants. If they can prove these allegations, and they are themselves totally blameless, then under the waste provision of the deed of trust they are entitled to some relief from liability under the promissory note. This is all we need hold in reversing this case. Because the circuit judge refused to consider the deed of trust at all in the trial of this case, we need not pass upon any of the remaining provisions of the deed of trust, and the effect, if any, upon the respective positions of the parties resulting from this breach of the waste provision.
Commercial laws should be framed to meet the needs and demands of business and commerce. Lending money is an essential ingredient of the modern world. Lenders must not have placed on them onerous legal burdens that discourage loans. Selling property is also a necessary ingredient. If the homeowner who must move to another city, or the business entrepreneur who cannot make his business profitable could not sell, lenders might be forced to foreclose with resultant losses to all concerned. That the owner of mortgaged property may sell, yet remain liable on the note secured by the mortgage is reasonable. Nor does it place an unnecessary or excessive burden upon a lender in a case where is he actually notified that secured property is being vandalized and destroyed to take some reasonable steps to protect the security from further waste, especially when he has ample legal authority under the deed of trust to prevent it. On the other hand, for such lender to stand idly by, as alleged under the unusual facts of this case, with the apparent expectation that parties secondarily liable will pick up the entire tab does place an unnecessary and excessive burden on those parties.
*248 By the express terms of the note executed by West Point and simultaneously personally by Lovejoy, Young and Brent, these three individuals were sureties. Upon their conveyance of the mortgaged property to the Ticers, who assumed payment of the indebtedness, the Hudsons became sureties on the promissory note. Gilliam v. McLemore, 141 Miss. 253, 106 So. 99 (1925).
In pre-UCC days when a security holder was charged with negligence in handling the secured property, we made a distinction between active and passive negligence. If the security holder was guilty of active negligence it would operate to discharge a surety to the extent he was damaged thereby, whereas passive negligence on his part did not affect the liability of the surety. See: Bank of Hickory Flat v. Crawford, 132 Miss. 350, 96 So. 100 (1923); Clopton v. Spratt, 52 Miss. 251 (1876); McMullen v. Hinkle, 39 Miss. 142 (1860); Caruthers v. Dean, 11 Smedes & Marshall 178. Thus, failure to record a deed of trust on personal property was a negligent "omission" rather than a negligent "commission," and did not discharge the surety. Bank of Hickory Flat v. Crawford, supra.
Miss. Code Ann. (1972) § 75-3-606 states in pertinent part:
§ 75-3-606. Impairment of recourse or of collateral.
(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder ...
* * * * * *
(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
The UCC makes no distinction between active and passive negligence. In Huey v. Port Gibson Bank, 390 So.2d 1005 (Miss. 1980), this Court was faced with a very similar question we previously addressed in Bank of Hickory Flatt v. Crawford. In the Port Gibson Bank case the bank failed to file a financing statement on a debtor's inventory with the secretary of state (filing only with the local chancery clerk), and the security interest therein was not perfected. Subsequently the debtor went into bankruptcy, and because of the failure to perfect its security interest, the bank lost its lien priority to these assets over other creditors. This Court held the individual endorser of the promissory note was released to the extent of the unjustifiable impairment in value of the collateral caused by such failure.
I recognize that the usual case of impairment of collateral envisioned by the UCC drafters occurs when it is in the possession of the creditor. See: Miss. Code Ann. § 75-9-207. However, this Court made it clear in Huey v. Port Gibson Bank that possession is not a pre-requisite to trigger § 75-3-606(1)(b). See also: Beneficial Finance Co. of Norman v. Marshall, 551 P.2d 315 (Okla.C.A. 1976).
It must also be borne in mind in this case that there is a vast practical difference between a secured party in possession of collateral and one who is not. When a creditor is in possession of collateral he has actual knowledge of its condition. Out of possession he may have no actual knowledge whatever as to the property's condition. I do not by this dissent intimate that a creditor out of possession should be charged with the duty of investigating the condition of collateral. All I suggest is that when such creditor receives actual notice that valuable collateral in which he has a security interest is being grossly and drastically wasted, dissipated or destroyed, and there is available to him ample legal recourse under the security agreement to protect this property, his failure to take any action whatever is an unjustifiable impairment of the collateral, and a surety on the note, who has no possession or control whatever over the collateral, and who is himself free from blame, is released to the extent of the impairment in value caused by such failure of the creditor to take any action. Under the allegations of the affirmative defenses in this case, which we must take as true for purposes of this appeal, North Mississippi's failure to act was every bit as damaging to these defendants as a positive act to impair the collateral's value.
*249 In Hughes v. Tyler, 485 So.2d 1026 (Miss. 1986), Robertson, J., concurring, we held the UCC provisions apply to a promissory note secured by real estate mortgage, and that an unjustifiable impairment in the value of the realty secured by a deed of trust operated to release a party secondarily liable. While the impairment in value in Hughes v. Tyler, was caused by the creditors release of part of the land covered by the deed of trust, a "commission" rather than an "omission," under the facts of this case, as we have noted, this is a distinction without a difference.
I would therefore reverse and remand for consideration by the trial court of the effect of the provisions of the deed of trust upon the respective rights and obligations of the parties. I would not in reversal foreclose any factual development relative to the property or conduct by any of the parties which may have relevance to their rights and responsibilities as to the mortgaged property, as set forth in the deed of trust.
Although the defendants' pleadings raised numerous issues which might more appropriately have been addressed in a chancery court, the issue of impairment in collateral could likewise have been addressed in the circuit court action. Hughes v. Tyler, supra. In view of the posture of this case, however, and the possibility of other questions appropriate for consideration under the provisions of the entire deed of trust, I would simply remand to the circuit court, leaving to the discretion of the circuit judge upon remand the determination whether the cause should be transferred to chancery.
The majority finds Huey v. Port Gibson Bank and Hughes v. Tyler, inapplicable. I respectfully disagree. Those cases concerned conduct which were far less egregious than the conduct these defendants allege North Mississippi did. In those cases we granted relief to parties secondarily liable as sureties under a promissory note.
On the other hand in my view the authorities cited by the majority are clearly distinguishable from what the defendants allege in this case.
In Kane v. Citizens Fidelity Bank & Trust, 668 S.W.2d 564 (Ky.App. 1984), the parties secondarily liable had executed a separate guaranty agreement, and were guarantors. The Kentucky Court of Appeals stated:
If Kane and Massie were merely sureties on the note, they would have a stronger argument and possible defense. They are not mere sureties, however. When they execute the continuing guaranty agreement, Kane and Massie waived their rights to assert the defenses which they now raise.
Id. at 565. Moreover, the Bank's conduct in that case was a mere peccadillo compared to this lender.
In Federal Deposit Insurance Corp. v. Kirkland, 272 S.C. 310, 251 S.E.2d 750 (1979), the trial referee did consider the security agreement and found that the vandalism did not result from any act of the lender. By its holding the majority will not permit the trial court to determine whether the lender has violated any duty arising from the deed of trust.
The majority cites the statement in American Bank of Commerce v. Covolo, 88 N.M. 405, 540 P.2d 1294 (1975), that a bank does not owe a fiduciary duty to its debtors and obligors under the UCC. I concur. But that case involved guarantors who were sued on a separate guaranty, and was not concerned with sureties on a note. The New Mexico Supreme Court held that failure to perfect a security interest by proper recordation did not release the guarantors for loss of the lien in a subsequent bankruptcy proceeding involved the principal debtor. The guaranty agreement absolved the bank in that case. If the New Mexico case involved sureties and that court still held the sureties were entitled to no relief despite the lender's failure to properly perfect the security interest, then of course such holding would be at odds with our Huey v. Port Gibson Bank. In Commercial Credit Equipment Corp. v. Hatton, 429 F. Supp. 997 (D.C.Tex. 1977), a lender failed to take steps to repossess an *250 airplane covered by a security agreement when requested to do so by a party secondarily liable under a "repurchase" agreement. The airplane was being used for commercial purposes contrary to the requirements of the security agreement. The district court though that holders of security agreements secured by automobiles should not be required to go chasing after autos which were not properly maintained by owners. There is, however, a vast practical difference between mobile collateral and fixed realty.
All North Mississippi would have been required to do in this case when it learned this property was being destroyed was declare a default, call on the borrowers and sell the realty at foreclosure. Attorneys' fees and all foreclosure costs were provided for in the note and deed of trust. After foreclosure North Mississippi had the perfect right to call on the borrowers for any deficiency. It would have posed no hardship or burden on North Mississippi to take these prudent steps. Had it done so, it would have saved thousands of dollars worth of security. Instead, it did nothing and chose to load the entire responsibility for its own inaction on these parties.
Lachrymally, the majority tells us that it would have a chilling effect to require lenders to "keep up with, inspect and maintain collateral." Of course, I suggest no such duty. On the other hand, if a lending institution must be protected by this Court for incredible stupidity or inconceivable callousness towards parties secondarily liable as alleged in this case, then lenders need guardians.
I see nothing chilling in saying to any lender: if the security on a realty deed of trust is being destroyed, and you are told about it and have ample recourse and opportunity to protect yourself under the terms of the deed of trust, but yet you do nothing whatsoever to prevent further damage, you do have some responsibility to those parties secondarily liable.
If no persons had been secondarily liable under the note, is it conceivable North Mississippi would have done nothing whatever when it learned this property was in the process of being destroyed? Since it had parties secondarily liable, however, rather than take any step whatever, it chose to place the entire cost of its own incredible conduct on those parties.
Photographs of the property are made an appendix of this opinion.
I would, therefore, reverse and remand as above stated.
DAN M. LEE, ROBERTSON and SULLIVAN, JJ., join this opinion.

*251 APPENDIX

*252 
*253 
*254