**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2016-CA-00007-COA**

| | |
|---|---|
| **COMPETITION MARINE OF MS, INC. A/K/A COMPETITION SPORTS OF MS, INC. AND GINA PRICHARD NADEAU** | **APPELLANTS** |

**v.**

| | |
|---|---|
| **WHITNEY BANK, A MISSISSIPPI STATE CHARTERED BANK F/K/A HANCOCK BANK, A MISSISSIPPI STATE CHARTERED BANK DOING BUSINESS UNDER TRADE NAME HANCOCK BANK** | **APPELLEE** |

DATE OF JUDGMENT:           11/23/2015
TRIAL JUDGE:                HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:  HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANTS:   WILLIAM B. WEATHERLY RICHARD CLARENCE SMITH
ATTORNEYS FOR APPELLEE:     MICHAEL ANTHONY SHAW BENJAMIN HARTE HARRIS III
NATURE OF THE CASE:         CIVIL - CONTRACT
TRIAL COURT DISPOSITION:    SUMMARY JUDGMENT GRANTED TO APPELLEE
DISPOSITION:                AFFIRMED - 05/23/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES, ISHEE AND GREENLEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.    In this debt-collection case, Competition Marine of MS Inc. (Competition Marine) and Gina Nadeau, its president, appeal the judgment of the Circuit Court of Harrison County, which granted Whitney Bank's[1] motion for summary judgment. The case involved

---

[1] Whitney Bank was formerly known as Hancock Bank, a Mississippi state-chartered bank doing business under the trade name Hancock Bank. Although many of the pertinent

two promissory notes executed by Appellants in favor of Whitney Bank. The trial court awarded Whitney Bank $633,401.72 on the first promissory note (Note 1). This amount represented principal, accrued interest, and late fees; pre-judgment interest of $9,243.82; and post-judgment interest at the rate of 5.250%. The trial court awarded Whitney Bank $191,324.80 on the second promissory note (Note 2), representing principal, accrued interest, and late fees; pre-judgment interest of $2,928.96, and post-judgment interest at the rate of 6.0%. The trial court also awarded attorney fees at the rate of 25% of the indebtedness. Finding no error, we affirm the trial court's decision granting summary judgment in favor of Whitney Bank.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. On July 6, 2007, Competition Marine executed Note 1 payable to Whitney Bank for the principal amount of $700,000 at an interest rate of 7.5%.[2] Nadeau, as president of

---

events occurred while the bank was known as Hancock Bank, we shall refer to the Appellee as Whitney Bank throughout.

[2] Note 1 provided the following:

LATE CHARGE. If a payment is 16 days or more late, Borrower will be charged 4.000% of the unpaid portion of the regularly scheduled payment or $5.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default: Borrower fails to make any payment when due under this Note.

Competition Marine, executed a Commercial Guaranty for the loan, personally guaranteeing full repayment for Competition Marine's indebtedness to the bank.[3] Note 1 was to be repaid in fifty-nine monthly installments of $5,703.79, beginning August 20, 2007. Note 1 was secured by a deed of trust in favor of the bank on real property at 309 Courthouse Road in

. . . .

LENDER'S RIGHTS. Upon default Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals, if not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

[3] The Commercial Guaranty stated as follows:

CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE. For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, *so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the indebtedness,* this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

(Emphasis added).

Gulfport, Mississippi. On August 24, 2012, Competition Marine renewed Note 1 for another five years with the principal amount totaling $632,555.84.

¶3. On December 8, 2011, Competition Marine executed a second promissory note, Note 2, payable to Whitney Bank for the principal amount of $191,324.80, with an interest rate of 6%, to be repaid in fifty-nine monthly installments of $2,132.61, beginning January 8, 2012. The provisions of Note 2 were similar to that of Note 1. Collateral for the loan consisted of deeds of trust in favor of Whitney Bank on real property at 309 Courthouse Road, and additionally, #2 Villa Cove Drive in Gulfport. Nadeau again personally guaranteed the commercial loan.

¶4. On July 15, 2014, counsel for Whitney Bank sent two letters to Nadeau demanding payment on the loans as they were in default. When payment was not made Whitney Bank sued Competition Marine and Nadeau for monetary damages in the amount of $748,496.19. Whitney Bank also sought attorney's fees of at least 25% of this figure, or $187,124.05, and other expenses, as well as pre- and post-judgment interest.

¶5. Competition Marine and Nadeau in turn filed a counterclaim against Whitney Bank on the grounds the bank intentionally misled them into believing the loans were current in order to add fees and interest to the debt. Also, Nadeau believed the payments were being automatically drafted from a bank account. Competition Marine and Nadeau also claimed that Whitney Bank was deliberately bringing financial harm to them by suing on collection of the debt rather than invoking rights under the deeds of trust. They contend the bank refused to release the deeds of trust, thereby making it impossible for them to use the

4

collateral to satisfy the debt.

¶6.     On August 4, 2015, Whitney Bank moved for summary judgment. Competition Marine and Nadeau responded, arguing the bank should be required to foreclose on the underlying collateral before obtaining summary judgment for monetary damages, because a foreclosure sale would reduce Nadeau's liability under the guaranties. They acknowledged their argument was not supported by current law but based on principles of fairness, equity, and public policy.

¶7.     After a hearing, the circuit court granted summary judgment in favor of Whitney Bank. Competition Marine and Nadeau timely appealed.

## STANDARD OF REVIEW

¶8.     An appellate court reviews a trial court's grant of a motion for summary judgment de novo. *Bosarge v. LWC MS Properties LLC*, 158 So. 3d 1137, 1142 (¶14) (Miss. 2015) (citation omitted). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." M.R.C.P. 56(c). "The moving party has the burden of demonstrating that no genuine issue of material fact exists, and the nonmoving party must be given the benefit of the doubt concerning the existence of a material fact." *Bosarge*, 158 So. 3d at 1142 (¶14). If the moving party meets its burden, the nonmoving party "may not rest upon the mere allegations or denials of the pleadings," but "must set forth specific facts showing there is a genuine issue for trial." *Id.* (citation omitted).

**ANALYSIS**

¶9.     Appellants argue that a genuine issue of fact remains regarding whether Whitney Bank acted reasonably in choosing to proceed with a collection action against Appellants before pursuing foreclosure proceedings on the real-estate collateral used to secure the loan. They admit current Mississippi law is not in their favor, but make a public-policy argument to change the law in this area.

¶10.     Appellants base their "reasonableness" argument upon the contractual principle of the implied covenant of good faith and fair dealing. Appellants claim a party who has broad contractual discretion "owes a duty to the other party to exercise discretion in a reasonable and expected manner that is consistent and non-interfering with the other party's attempt to comply with the terms of the contract." For public policy's sake, Appellants contend that bank creditors should not be permitted to "strategically prosecute collection actions against debtors and guarantors while simultaneously holding on to their rights" in the collateral that secures the debt, when the debt could be reduced by a foreclosure sale. Furthermore, they suggest this policy would also substantially reduce the attorney's fees awarded in these types of actions.

¶11.     More specifically, Appellants request that the controlling authority of *West Point Corp. v. New North Mississippi Federal Savings & Loan Association*, 506 So. 2d 241 (Miss. 1987), be revisited and overturned. In *West Point*, the Mississippi Supreme Court held that the lender "had the right to sue and recover in a court of law on the promissory note, without first proceeding to a foreclosure of the deed of trust." *Id.* at 242. The court cited the

6

American Jurisprudence treatise in support: "[A] creditor whose debt is secured by mortgage may pursue his remedy in personam for the debt, or his remedy in rem to subject the mortgaged property to its payment." *Id.* (citing 55 Am. Jur. 2d *Mortgages* § 541 (1971)). Additionally, the *West Point* Court stressed the long-standing nature of this holding by citing *Rea v. O'Bannon*, 171 Miss. 824, 158 So. 916 (1935). *Rea* discussed how, in the context of a default where there was a lien on the property, a promissory note holder has the right to elect the remedy of either foreclosure or collect the debt in a legal forum, or both.[4] *Id.* at 832, 158 So. at 918.

¶12.   This Court has addressed a similar situation in *Knights Properties Inc. v. State Bank & Trust Company*, 77 So. 3d 491 (Miss. Ct. App. 2012). In *Knights*, this Court affirmed summary judgment in favor of the lender/bank. *Id.* at 492-93 (¶1). As here, the corporate borrower had secured a commercial loan with real estate and later defaulted on the loan. *Id.* at 492 (¶1). One of the officers, Chad Knight, executed a commercial guarantee. *Id.* at 493 (¶4). Although Knight claimed the collateral was valued at $300,000, he failed to inform the bank that the property had restrictions which substantially decreased its value. *Id.* Upon default, the bank began foreclosure proceedings until it discovered the discrepancy in the land's value. *Id.* Because of the discrepancy, the bank decided to forego foreclosure and pursue a monetary judgment against the corporation and the guarantor. *Id.* at (¶5). Based upon the principle established in *Rea* and *West Point* that "there is no inconsistency in a

---

[4] The *Rea* Court stated: "There is no inconsistency between the legal and equitable remedial rights possessed by a mortgagee in case of a breach, and he may exercise them all at the same time, and resort to one is not a waiver of the other." *Id.* at 832, 158 So. at 918.

mortgagee's legal and equitable rights" after a breach, this Court held that the lender was not precluded by the doctrine of election of remedies from seeking monetary judgment against a promisor and guarantor instead of foreclosure. *Id.* at 494-95 (¶15) (quoting *Rea*, 171 Miss. at 832, 158 So. at 918). *Knight* illustrates the longstanding law in Mississippi that a lender has multiple remedies upon default, and may sue upon the note before foreclosing on collateral.

¶13.    Here, the loan documents for both notes specifically call for monetary payment to the bank, and do not require the bank to foreclose in the event of a default. Accordingly, the lender may choose to proceed with a collection suit on the loan instead of foreclosing on real-estate collateral. Appellants here cited no Mississippi authority to the contrary. Instead, Appellants cite cases from Idaho and New Jersey in support of a "foreclosure-first rule." However, these cases are governed by unique state statutes. Idaho's "one-action rule" requiring that a mortgagee exhaust the security before proceeding against the debtor on the underlying debt is based on statute. *See Eastern Idaho Prod. Credit Ass'n v. Placerton Inc.*, 606 P.2d 967, 971 (Idaho 1980); *McRay v. Twitchell*, 735 P.2d 1098, 1099 (Idaho Ct. App. 1987).[5]   The New Jersey case cited by the Appellants is also based on a state statute. *See Wildwood Title & Trust Co. v. Geisenhoner*, 11 N.J. Misc. 871, 168 A. 751, 752 (1933). The case explains the statute was "enacted to counteract a prevailing evil which then existed

---

[5] The Idaho Supreme Court explained, however, that the law was established for public policy concerns: "To allow the creditor to retain the security without ascertaining its value, and then to give him a judgment for the full amount of the debt, is contrary to the policy of Idaho law requiring foreclosure prior to recovery on the debt." *Placerton Inc.*, 606 P.2d at 972.

and which was very oppressive to mortgage debtors." 168 A. at 753. However, the Appellee notes current New Jersey statutory law excludes commercial loans from the foreclosure-first rule. *See* N.J.S.A. 2A: 50-2.3. Appellants' arguments for a "foreclosure-first rule" are more appropriately addressed to the Mississippi Legislature.

¶14.    Appellants' argument that such lending practices breach the implied covenant of good faith and fair dealing also fails. The Mississippi Uniform Commercial Code defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." Miss. Code Ann. § 75-1-201(b)(20) (Rev. 2016). We cannot say, under the promissory notes executed, that the transaction was contractually unfair or unreasonable according to current commercial lending practices in Mississippi. Additionally, the Mississippi Supreme Court has stated that taking actions expressly authorized by the contract cannot breach the implied covenant of good faith and fair dealing. *See Limbert v. Miss. Univ. For Women Alumnae Assoc.*, 998 So. 2d 993, 999 (¶14) (Miss. 2009) (quoting *GMAC v. Baymon*, 732 So. 2d 262, 269 (¶29) (Miss. 1999)).

¶15.    Most importantly, however, this Court is not at liberty to overturn Mississippi Supreme Court precedent, regardless of any possible public-policy benefits or principles of equity. We are "bound to uphold and apply all precedent handed down from the supreme court" and are not "empowered to reverse the precedent surrounding the issue presented." *Carr v. State*, 942 So. 2d 816, 817 (¶4) (Miss. Ct. App. 2006). Under current Mississippi case law, Whitney Bank's actions were legal and proper; Appellants have failed to create a genuine issue of material fact to the contrary. Therefore, we find the trial court did not err

9

in granting summary judgment in favor of Whitney Bank.

¶16.    **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, FIRST JUDICIAL DISTRICT, IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**