Maurice KANE and David D. Massie,
Appellants/Cross-Appellees,

v.

CITIZENS FIDELITY BANK AND
TRUST COMPANY,
Appellee/Cross-Appellant.

Court of Appeals of Kentucky.

Feb. 24, 1984.

Rehearing Denied May 4, 1984.

Fred M. Goldberg, James S. Goldberg, Edward L. Schoenbaechler, Goldberg & Simpson, P.S.C., Louisville, for appellant/cross-appellee, Massie.

Raymond J. Naber, Jr., Louisville, for appellant/cross-appellee Kane.

Richard Frockt, Lester I. Adams, Jr., Barnett & Alagia, Louisville, for appellee/cross-appellant.

Before COOPER, DUNN and HOWERTON, JJ.

HOWERTON, Judge.

Kane and Massie appeal from a judgment of the Jefferson Circuit Court holding them jointly and severally liable to Citizens Fidelity Bank and Trust Company for $164,165.63, plus interest. They argue that the judgment is erroneous because they are entitled to the defense of "impaired collateral" under KRS 355.3–606, which would discharge their liability as sureties on a note. They also argue that equitable principles preclude the bank from asserting its claim against them. Citizens has filed a cross-appeal claiming that the trial court

erred in refusing to grant it a reasonable attorney's fee.

On June 19, 1980, Makilba Mining Company, Inc., executed a promissory note and security agreement to the bank for $225,-000. Kane and Massie signed the note as sureties. On the same date, Kane and Massie signed a continuing guaranty agreement as additional security for the loan.

Shortly after the execution of the note, Kane and Massie notified the bank that Makilba might default in its payment of the note. Citizens took no action at that time, but on September 12, 1980, it notified Makilba that it considered the loan to be in jeopardy and it began demanding direct payment from the company's debtors. The loan was not paid in full when it was due in December, and this action was filed by Citizens in February 1981. Kane and Massie offered to assist the bank in locating and attaching Makilba's assets to help satisfy the debt, but Citizens declined to levy on the assets because it did not believe they would satisfy the amount due. The court granted summary judgment in favor of the bank against Kane and Massie for the unpaid balance plus interest on June 25, 1982.

Kane and Massie first argue that the bank dealt with the collateral in a commercially unreasonable manner and significantly impaired their right of recourse making them vulnerable as sureties. They argue that such action discharges their obligation under the Uniform Commercial Code and equitable principles.

■ If Kane and Massie were merely sureties on the note, they would have a stronger argument and possible defense. They are not mere sureties, however. When they executed the continuing guaranty agreement, Kane and Massie waived their rights to assert the defenses which they now raise. The guaranty agreement reads, in part:

> CITIZENS FIDELITY shall not be required to enforce any of its rights or pursue any of its remedies against DEBTOR ... or to enforce any security interest in any collateral granted to CITIZENS FIDELITY to secure payment of said credits as a condition precedent to enforcing the terms of this agreement or the liability of GUARANTOR hereunder.

The agreement also gave the bank the right to "in any manner deal with any collateral" without prior notice to or consent of the guarantors. These terms are valid and enforceable and are not affected by KRS 355.3–606, which relates only to negotiable instruments. The continuing guaranty agreement is not a negotiable instrument.

No Kentucky court has yet decided the effect of such guaranty terms, but other courts have decided the question under facts and circumstances similar to this case. In *National Acceptance Co. of America v. Demes*, 446 F.Supp. 388 (N.D. Ill.1977), the court granted summary judgment against the guarantors, who argued that the creditor should be required to first pursue the debtor and his collateral. In *National Acceptance Co. of America v. Wechsler*, 489 F.Supp. 642 (N.D.Ill.1980), the court evaluated the function of guaranty agreements in commercial transactions. At page 648, the opinion reads:

> Such agreements facilitate the issuance of loans by insuring that the lender has a ready source from which it can collect in the event of default by the debtor. To this end, it would not be unusual for a lender to require a guarantor to waive objections to payment that otherwise might be available.

■ In *Union Planters National Bank of Memphis v. Markowitz*, 468 F.Supp. 529 (W.D.Tenn.1979), the court addressed the guarantor's argument that he was discharged by an impairment of collateral given by the principal debtor. At page 535, the court provided:

> A continuing guarantor does not guarantee a particular note, but rather guarantees an overall indebtedness. A continuing guarantor is thus obliged to pay the debts of the defaulting principal whether those debts are secured by collateral or

not. In short, a continuing guarantor cannot rely on the presence of collateral securing a particular note. As long as the continuing guaranty in this case was in effect, nothing prevented Markowitz Bros. from incurring new debts to plaintiff secured by no collateral whatever. Under these circumstances, the fact that the note in question here was secured by collateral was largely fortuitous from the point of view of the continuing guarantors.

Kane and Massie attempt to distinguish *Markowitz* on the basis that the guarantors were not signers and sureties on the note in default. We fail to find any relevance in that fact. When Kane and Massie executed the continuing guaranty agreement, they took on a different liability which superseded their original role as it related to the note only.

The terms and conditions of the agreement executed by Kane and Massie make them jointly and severally liable for the full amount guaranteed. The agreement further provides that the bank has no duty to enforce any right or pursue any remedy against Makilba before looking to them for payment. Finally, we note that the agreement provides that "continuing guaranty is several and is independent of any other obligations or liabilities of guarantor on debtor's credits whether as co-maker, endorser, surety, or otherwise."

We find nothing in equitable principles or the Uniform Commercial Code which would relieve Kane and Massie of their liability. The primary purpose of the loan was to give Kane an opportunity to purchase the majority of Makilba stock. The loan was made on the basis of his personal financial strength and not because of any security interest Citizens might obtain in Makilba's assets or receivables. Even in the absence of the guaranty agreement, it is questionable as to whether Kane and Massie would be excused as sureties. The bank declined to take possession of the Makilba collateral on the advice of engineers. It was advised that the repossession of coal supplies would be uneconomical and disruptive of

the regular operation of Makilba. The bank was receiving payments from Blue Diamond Mining, the major purchaser of Makilba's coal.

KRS 355.3–606(1)(b) does provide that a holder of a note discharge any party to the extent that the holder unjustifiably impairs any collateral given for the security of the note, when such action is done without the consent of the surety or party to the instrument. Comment 5 of the official code comments to this section explains that the creditor's conduct in respect to the collateral is measured by the standard in KRS 355.9–207. Subsection (1) of that statute reads, "A secured party must use reasonable care in the custody and preservation of collateral in his possession." It is the opinion of this court that the better reasoned opinions interpreting the comparable sections of the Uniform Commercial Code apply the doctrine of impairment only when the collateral has come into the possession of the creditor. *See*, i.e., *North Carolina National Bank v. Sharpe*, 35 N.C.App. 404, 241 S.E.2d 360 (1978); *Bank of New Jersey v. Heine*, 464 F.2d 1161 (3rd Cir.1972); and *Commercial Credit Equip. Corp. v. Hatten*, 429 F.Supp. 997 (N.D.Tex.1977). In *Hatten*, the court refused to find that a creditor owed a duty to preserve the collateral (an airplane) when the creditor was not in possession. The court reasoned at page 1001:

> ... the imposition of such a duty flies in the face of commercial realities .... In addition to the practical problems involved in such a system, it would not appear to be sound public policy to encourage creditors and sureties to follow debtors about to insure that the value of collateral in their possession is not deteriorating.
>
> To the extent that a surety feels insecure and believes a debtor is in default, he is always entitled to pay off the indebtedness, be subrogated to the rights of the creditor, and then repossess ....

Citizens never had possession of any assets other than accounts receivable, which it collected. Had Kane and Massie been so

concerned about the Makilba debt, they could have paid off the loan and become subrogated to the rights of the creditor and dealt with the assets as they saw fit and were entitled by law to do.

The judgment of the Jefferson Circuit Court must be affirmed on the appeal by Kane and Massie.

■ On cross-appeal, Citizens argues that the trial court erred in refusing it a reasonable attorney's fee. Kentucky law now allows the recovery of an attorney's fee in collection and foreclosure actions, even when the agreement allowing for such fee was executed prior to its enforceability. *See* KRS 453.250 and *Central Kentucky Production Credit Assoc. v. Smith,* Ky., 633 S.W.2d 64 (1982). In this case, however, the only provision for an attorney's fee was contained in the security agreement executed by Makilba. The provision for a fee relates only to a situation where the bank takes legal action against the collateral. Kane and Massie were not liable under the security agreement as individuals. Neither the note nor the guaranty agreement makes any mention of an attorney's fee.

The trial court did not err as a matter of law or abuse its discretion in denying the bank an award of an attorney's fee in this case. Therefore, we also affirm the judgment of the circuit court on the cross-appeal.

All concur.