John K. SNYDER, Donald E. Hedrick and Hoosier Bancorp of Indiana, Incorporated, Plaintiffs–Appellants,

v.

BANK ONE, KENTUCKY, N.A., f/k/a Liberty National Bank & Trust Company Of Louisville, Joseph W. Phelps, President, Liberty National Bank & Trust Company of Louisville, and Douglas H. Madison, Senior Vice President of Liberty National Bank & Trust Company of Louisville, Defendants–Appellees.

No. 96–1697.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1996.

Decided May 15, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied June 9, 1997.

---

**776**

Michael K. Sutherlin, Sutherlin & Associates, Indianapolis, IN, Patrick R. James (argued), Little Rock, AR, for Plaintiffs-Appellants.

John R. Crockett, III, Sheryl G. Snyder (argued), Brown, Todd & Heyburn, Louisville, KY, William C. Potter, II, Indianapolis, IN, Victor B. Maddox, Tachau, Maddox & Hovious, Louisville, KY, for Defendants-Appellees.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

In this race to the courthouse, the plaintiffs, debtors Hoosier Bancorp of Indiana, Inc. (Hoosier) and John Snyder, and guarantor Donald Hedrick, sued Bank One (f/k/a Liberty) pressing various claims and allegations. These included conspiracy between the Office of the Comptroller of the Currency (OCC) and Bank One to prevent Hedrick from participating in Hoosier business (*i.e.*, managing Rushville National Bank) and to declare Rushville National Bank in default; breach of oral promise; tortious interference with business relations; and a derivative claim for personal recovery. Bank One filed a counterclaim seeking to recover the principal and accumulated interest owed by Hedrick and Hoosier under a 1992 loan agreement.

The district court granted summary judgment in favor of Bank One dismissing all of the plaintiffs' claims and entering judgment for Bank One on its counterclaim. We affirm.

## I. Factual Background

In 1981 Hoosier, a bank holding company, borrowed $1,920,000 as acquisition financing from Bank One[1] to purchase Rushville National Bank (Rushville). The loan was secured by 74,128 shares of Rushville stock and guaranteed by Donald Hedrick. The shares were held as a pledge by Bank One. Hedrick owned approximately 88% of Hoosier, and thus of Rushville. John Snyder owned the remainder of Hoosier. Between the origination of the loan and July of 1992 the debt was renegotiated in several successive forbearance agreements. The last, the Third Forbearance Agreement, simultaneously served as a settlement of an ongoing lawsuit which had been filed in July 1992. The Third Forbearance Agreement reduced the loan

---

1. The money was borrowed from Liberty National Bank & Trust Company of Louisville. Liberty Bank was Bank One's predecessor. For the sake of clarity, we will call the defendant in this case Bank One, even if some actions were taken by the predecessor Liberty Bank.

principal to $695,000 and superseded all previous agreements while incorporating a previous guaranty agreement—the 1992 Related Guaranty Agreement.

On November 12, 1992 the OCC suspended Donald Hedrick from "further participation in any manner in the conduct of the affairs of [Rushville] in order to protect the Bank or the interests of the Bank's depositors." Bank One, on November 13, filed a Notice of Intent to Declare Default, triggering the "meet and confer" provision of the Third Forbearance Agreement.[2] It is undisputed that the "meet and confer" meeting took place on November 18, and that Bank One declared the loan in default on November 19. Bank One then, as authorized by the Third Forbearance Agreement and incorporated guaranty agreement, demanded that Hoosier pay the principal and accumulated interest and that Hedrick, as guarantor, pay the principal and accumulated interest.

The plaintiffs contend that, when Bank One declared default, Bank One also "repossessed" the pledged stock certificates, the only collateral for the loan, and proceeded to retain them until they were worthless. The plaintiffs argue that Bank One elected its remedy, retention of the collateral, and cannot now complain that it insufficiently protected the value of that collateral by not selling it while it still had value. The Rushville stock lost all value on December 18, 1992, when the OCC ordered Rushville closed and directed the FDIC to liquidate Rushville's assets.

The plaintiffs argue that their debt was fully satisfied when Bank One retained possession of the collateral after declaring default; that Bank One impaired the collateral by failing to sell it before Rushville was closed; that the plaintiffs did not expressly waive impairment of the collateral; and that they were denied sufficient opportunity to conduct discovery and that summary judgment was improper and premature. Bank One claims that it never "repossessed" the collateral; that it acted in good faith and with commercial reasonableness in all its dealings; that the plaintiffs' claims have been waived; and that discovery was exhaustive and summary judgment proper.

## II. Collateral as Full Satisfaction of the Debt

 The plaintiffs argue that Bank One "took possession" of the collateral, under Kentucky's Uniform Commercial Code § 9–505 (U.C.C.).[3] Default triggers a creditor's duty to demand payment or some substitute from the debtor. Taking possession of the collateral triggers a duty in the creditor either to retain possession of the collateral in satisfaction of the debt, or to sell it in a commercially reasonable manner upon demand of the debtor. The plaintiffs argue that Bank One did not sell the stock and did not attempt to do so in a commercially reasonable manner. Thus Bank One has elected retention of the collateral in satisfaction of the debt.

██ A creditor may not repossess valuable collateral and also claim the full unpaid balance of the loan. *Warnaco, Inc. v. Farkas*, 872 F.2d 539, 545 (2d Cir.1989) (interpreting identical U.C.C. provision under Connecticut

---

**2.** The following "Event of Default" is recited in the Third Forbearance Agreement:

(f) If the OCC, the FRB or the FDIC takes any action which could limit, restrict, hamper, or interfere in a material way with or otherwise control in a material way any aspect of the business or operations of either the Borrower or Rushville by their current owners and management, *provided that* if any such event occurs, before such event shall constitute an Event of Default, [Bank One] shall give the Borrower notice of its intent to declare a default under this subparagraph (a "Notice of Intent") and the Borrower may request a meeting with appropriate representatives of [Bank One] by a written notice ·... [Bank One] shall

make appropriate officers available for a meeting.... If ... the meeting is held in accordance with this subparagraph, then [Bank One] may declare a default under this subparagraph immediately after the conclusion of that meeting. [Bank One's] decision whether to declare a default after any such meeting shall be made in [Bank One's] sole discretion.

**3.** The Third Forbearance Agreement selects Kentucky under its choice of law provision. Section 9–505 is titled "Acceptance of the collateral as discharge of obligation" and states that "a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation." § 9–505(2).

law). A limitation on recovery is likewise detailed in the Third Forbearance Agreement. The Remedies section of that Agreement states that Bank One "shall be entitled to recover from the cumulative exercise of all remedies an amount no greater than the sum of [ ] the outstanding principal balance of the Third Replacement Term Note, [accumulated interest, legal fees and costs]." Thus, if Bank One retained the collateral with the intent to keep it, then Bank One may be estopped from also seeking full payment of the note.

■ The plaintiffs allege repeatedly that Bank One "repossessed" the stock when it declared the note in default. This is contrary to fact. As pledged stock, Bank One has had physical possession since the inception of the loan in 1981. Bank One did not *take* "possession" of the collateral in any physical sense at the time of default. Instead the plaintiffs can only argue that perhaps Bank One evidenced some intent to *retain* the stock in satisfaction of the debt.

As a counter to the plaintiffs' charge that Bank One retained the stock in satisfaction of the debt, Bank One points to its attempts to sell the stock and to its communications (by letter) with Hoosier and Hedrick which indicate an intent to sell the stock. The district court agreed with Bank One and found that "a jury conclusion that [Bank One] in fact intended to retain the collateral in satisfaction would be unreasonable." Support for the district court's conclusion is found in Kentucky's U.C.C. § 9–505(2) which provides that "a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. *Written notice of such proposal shall be sent to the debtor* if [the debtor] has not signed after default a statement renouncing or modifying his rights under this section." (Emphasis added). Bank One sent the plaintiffs a letter indicating its intent to sell the collateral, not to retain the collateral in satisfaction of the debt. Thus the question is whether this amounted to a retention of the collateral by Bank One.

■ The purpose of § 9–505 is to protect the debtor in those cases where the collateral might be worth more than the amount owed. The required notice provides the debtor with an opportunity to insist on a sale or other accounting. Notice also protects the debtor when the value of the collateral does not equal or exceed the amount due by reducing the amount to be collected from the debtor. *See Ingersoll–Rand Fin. Corp. v. Electro Coal, Inc.,* 496 F.Supp. 1289, 1291 (E.D.Ky.1980) (applying Kentucky law). Those cases which have found implied retention of collateral typically deal with very long periods of time. *See, e.g., Millican v. Turner,* 503 So.2d 289, 291 (Miss.1987) (unreasonably long period precludes suit on the note). It is undisputed that only one month passed between the declaration of default and the decision by the FDIC to close Rushville. The plaintiffs' insistence that the three years following the closure of Rushville should be considered in evaluating the alleged retention is simply wrong; Bank One had no choice but to hold on to the stock at that point. Closing Rushville, of course, reduced the value of the stock to zero. The facts of this case do not indicate that Bank One impliedly retained the stock in satisfaction of the debt, and it would be unreasonable to hold that it did.

■ *Warnaco* offers an analogous fact situation, in which the creditor took no action with respect to trademarks held by it as a pledge. After noting that it is the debtor's responsibility to compel the creditor to dispose of the collateral in an accountable manner, the court noted that

> [e]ven if a debtor does not seek [to compel disposition], however, the creditor must deduct the value of the collateral at the time of repossession from the outstanding balance of the debt. In that scheme, there is no role for an extra-statutory rule that contemplates repossession of collateral in full satisfaction of the debt where the creditor fails to give the requisite notice and the value of repossessed collateral is less than the debt.

*Warnaco,* 872 F.2d at 544–45. Further, "a creditor is under no duty to act with regard to collateral that has no realizable value." *Id.* at 545. The collateral in this case lost all

value within one month of default.[4] During that month, Bank One did not notify Hoosier or Hedrick of any intention to retain the collateral. On the contrary, it notified them of its intent (and plan) to sell the stock.

### III. Impairment of the Collateral

Hedrick, as guarantor, argues that he is not liable on the note because Bank One impaired the collateral. He relies on Kentucky's U.C.C. § 3–606.[5] Because Bank One contends and the district court found that Hedrick expressly waived any impairment of collateral defense, we address waiver first and the merits second.

#### A. Waiver

■ Hedrick, as guarantor, cannot rely on U.C.C. § 3–606, because that provision applies only to negotiable instruments, which the Guaranty Agreement is not. *See Kane v. Citizens Fidelity Bank & Trust Co.,* 668 S.W.2d 564, 565 (Ky.Ct.App.1984). But because the principles on which § 3–606 are grounded remain applicable, we will discuss the merits of impairment in section B, below.

■ The district court also found that Hedrick expressly waived any impairment of collateral defenses based on the 1992 Related Guaranty Agreement, which was incorporated in the Third Forbearance Agreement. Section 6 of the Guaranty Agreement is entitled "Obligations Not Impaired" and includes, in subsection 6.13,[6] the following language stating that the guarantor's obligations will not be affected by:

Any action or inaction (including without limitation the election of the Lender to

proceed with a judicial or nonjudicial foreclosure against any real or personal property security it holds) by the Lender or any other persons which results in any impairment or destruction of (a) any subrogation of rights of the Guarantor, (b) any rights of the Guarantor to proceed against Borrower or any other person for reimbursement, or (c) any rights of the Lender with respect to the Collateral.

Since such a waiver is valid in Kentucky, Hedrick's obligations remain unaffected by any impairment of collateral due to Bank One's actions. *See Kane,* supra; *see also Hedrick v. First Nat'l Bank & Trust Co. of Plainfield,* 482 N.E.2d 1146, 1148 (Ind.Ct. App.1985) (waiver also valid under Indiana law).

#### B. The Merits

■ Even if Hedrick had not expressly waived his right to rely on impairment of the collateral, Bank One is not responsible in any way for unreasonably impairing the collateral. Section 3–606(1)(b) provides that the holder of collateral discharges the debtor if the holder "unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." In Kentucky, a creditor's conduct is evaluated under the standard of "reasonable care." *Ramsey v. First Nat'l Bank & Trust Co. of Corbin,* 683 S.W.2d 947, 951 (Ct.App.Ky.1984). Hedrick has presented no evidence that Bank One acted unreasonably or failed to exercise reasonable care. Bank One, in the limited time available to it, attempted to sell Rushville National Bank and maintained continuing communication with Rushville's directors. Despite these ef-

---

4. Plaintiffs' contention that the stock retained value even after Rushville was closed is without merit. Peoples Bank paid over one million dollars for Rushville's assets, *without any of its liabilities*. Further, the sale proceeds were retained entirely by the FDIC, none going to the owner of the Rushville common stock. In fact, the stock itself never changed hands during this sale.

5. Kentucky has repealed § 3–606, effective January 1, 1997.

6. Other relevant sections include § 5.03 stating that the Guarantor covenants that the Guaranty Agreement "will not be discharged except by

complete payment and performance of all obligations of Borrower under the Loan Documents." Also under § 6, the guarantor agreed that his obligations would not be impaired if the creditor "[took] or [omitted] to take any action referred to in the Loan Documents." § 6.05. Impairment was also excluded if there was "[a]ny failure, omission, delay or lack on the part of the Lender or any other person, to enforce, assert or exercise any right, power or remedy conferred on the Lender or any other person in the Loan Documents, or any action on the part of the Lender or any other person granting indulgence or extension in any form." § 6.06.

forts at sales, the FDIC closed Rushville before Bank One could sell the stock. Thus, it would be unreasonable to hold that Bank One unjustifiably impaired the collateral.

Hedrick also argues that Bank One did not act in a commercially unreasonable manner when attempting to sell the collateral. He relies heavily on *Wisconics Engineering, Inc. v. Fisher*, 466 N.E.2d 745 (Ind.Ct.App.1984). While this case is based in Indiana law, and not Kentucky law, and is thus only persuasive, *Fisher* proves in any case to be ultimately unavailing.

The debtors in *Fisher* relied on the same provisions of the U.C.C. with which we deal here: § 9–505, retention of collateral, and § 3–606, impairment of collateral. The facts of that case, however, differ significantly from the one before us. The loan in *Fisher* financed the purchase of a business; the creditor was the previous owner of the business and he retained the pledged stock as security for the loan, much as Bank One retained the Rushville stock. *Id.* at 749. When the debtor defaulted, the creditor "elected to vote the stock, ... to install himself as President and resume control of the corporation.... [The debtors] were denied access to their offices, the property, and the corporate records." *Id.* at 750. The creditor also filed for Chapter 11 relief for the company and, ultimately sold the stock at a judicial sale for a greatly reduced price. *Id.* Here, on the other hand, Bank One never wrested control from Rushville's directors. To the contrary, Bank One urged Rushville's directors to stay in their positions and to continue running the bank; Bank One disavowed any interest in running Rushville itself. Nevertheless, Rushville's directors *did* resign, making any ameliorative action by Bank One (such as sale of the stock) that much more difficult. The creditor's actions in *Fisher* occurred over an eighteen-month period of time; on the other hand, Bank One had only one month within which to act and made reasonably prompt attempts to do so. So, while the court in *Fisher* ultimately found that factual issues prevented a legal determination of the creditor's intent in regard to its possession of the collateral, there are no such factual issues presented here.

Bank One did not at any time send written notice of intent to accept the collateral in satisfaction of the debt. Holding the collateral for a one month period while making at least some efforts to sell it is a very different matter from holding and controlling a business for eighteen months. Bank One used reasonable care for the month that it was possible to do so and any conclusion to the contrary would be unreasonable.

Further, double recovery is not a risk here because the stock lost all value, due to actions of the OCC and FDIC, within one month of default. Hedrick's last argument is that Bank One must have intended to retain possession of the collateral since it declared default only one month prior to the final due date of the loan. The bank could simply have waited to be paid if it sought only the money it was owed. But Bank One did not in any way violate its contractual agreement or its statutory duties in its dealings with the plaintiffs. There seems to be no basis for reading improper motives into its actions. The timing of the declaration of default was due to the timing of the OCC's actions. Nothing in the Third Forbearance Agreement or in contract law in general requires Bank One to behave magnanimously.

## IV. Was Discovery Complete?

▮ Plaintiffs also allege that Bank One and the OCC engaged in a conspiracy to suspend Hedrick from banking, to call the loan in default and to close Rushville. The plaintiffs believe that they have been denied adequate opportunity for discovery on this claim and that summary judgment was thus premature. Aside from the fact that no motive for this alleged conspiracy is ever posited, plaintiffs had three years to engage in discovery and to depose witnesses. The plaintiffs claim that they were denied the opportunity for full discovery of the communications between Bank One and the OCC. Yet they fail to cite any foiled attempt to gain this information during the three years discovery was ongoing. Further, plaintiffs deposed several of the bank's officers—Walter Beale and Doug Madison for two days each and Joseph Phelps for one. Plaintiffs also scheduled the depositions of at least six

OCC officers only to cancel them all and never to reschedule. Given the lack of evidence that Bank One's actions evidence any improper, much less sinister, purposes, the district court's grant of summary judgment was not premature.

## V. Conclusion

Plaintiffs Hoosier and Hedrick have attempted to avoid liability for their defaulted loan by striking the first blow. This strategy has failed. Bank One is owed the outstanding principal and accumulated interest on its loan to Hoosier, and both Hoosier and Hedrick are liable for the full amount of the note. Claims of impairment of collateral and retention of collateral notwithstanding, Bank One acted in a commercially reasonable manner when it declared Hoosier in default and attempted to sell its pledged stock. After three years of discovery this dispute is ripe for resolution, and the district court's issuance of summary judgment is

AFFIRMED.