390 So.2d 1005 (1980)
Don B. HUEY
v.
PORT GIBSON BANK.
No. 52024.
Supreme Court of Mississippi.
December 3, 1980.
*1006 Nick B. Roberts, Jr., Bryan, Nelson, Allen, Schroeder & Cobb, Gulfport, for appellant.
Geoffrey C. Morgan, Morgan & Morgan, Kosciusko, Allen L. Burrell, Drake & Burrell, Port Gibson, for appellee.
Before PATTERSON, C.J., and BROOM and LEE, JJ.
PATTERSON, Chief Justice, for the Court:
A judgment for $32,442.33 and attorneys' fees of $6,488 was entered in the Circuit Court of Winston County against Don B. Huey as a personal endorser on two notes executed by Sav-Rite Drugs of Port Gibson, Inc., to the Port Gibson Bank. Aggrieved, Huey appeals and contends the trial court erred (1) in permitting the jury to carry all evidentiary exhibits into the jury room following the bank's case in chief and prior to the submission of the case for the jury's verdict, (2) in refusing Huey's motion for a directed verdict, (3) in refusing Huey's jury instruction D-4, (4) in permitting the jury to consider testimony of the value of the collateral other than market value, (5) in overruling Huey's motion for a remittitur, and (6) in overruling Huey's motion for a new trial.
The Bank of Port Gibson (hereinafter bank) filed suit on two promissory notes personally endorsed by Don Huey, Secretary and Treasurer of Sav-Rite Drugs of Port Gibson, Inc. (hereinafter Sav-Rite), the maker. The notes were executed to obtain capital to purchase inventory, furniture, and equipment for Sav-Rite.
*1007 The first for $29,508.12 was executed on March 31, 1977, and was to be repaid by monthly installments of $819.57. Sav-Rite was the corporate maker of the note with personal endorsement by R. Lewis Rieger, Ellis J. Jenkins, and Don B. Huey, the appellant, all corporate officers of Sav-Rite. As collateral, a security agreement was imposed on all inventory, furniture and appliances located in Sav-Rite and owned by the maker. To protect its interest in this note, the bank filed a financial statement evidencing the agreement on collateral with the Chancery Clerk of Claiborne County wherein the inventory, furniture and appliances were located. The bank, however, did not file such financial statement evidencing the security interest with the Secretary of State.
A second note was executed by Sav-Rite on May 11, 1977, for $25,000 at 9% interest with no monthly schedule for repayment. The personal endorsers on this note included R. Lewis Rieger and the appellant Huey. Across its face there was written "Further advance under the security agreement on furniture and fixtures and personal finance statement of endorsers."
Both notes provided for reasonable attorneys' fees for collection if not timely paid. Under this agreement, the bank incurred a loss in the collection process.
The bank required Huey to submit personal financial statements before closing the loans to demonstrate his financial ability to support the credit extended to the corporate maker. This portrayed a net worth of $174,395 on July 23, 1976, and a net worth of $260,785 in December 1976.
Sav-Rite executed a third note for $9,005 to the bank following the execution of the notes mentioned. This note bears the personal endorsement of Julian Robinson and is not in direct issue on appeal as Huey did not endorse it. However, it has some significance because it was paid in full as a Creditor of Sav-Rite from bankruptcy proceeds.
The corporate maker, Sav-Rite, subsequent to executing the notes, filed for bankruptcy in the Middle District Court of Louisiana. On November 14, 1977, the bank filed its proof of claim with the Trustee in Bankruptcy seeking $55,964.30 plus accrued interest from the date of bankruptcy on the notes as a secured creditor of Sav-Rite. The bank received two checks totaling $15,365.25 from the bankruptcy proceedings, $12,500 of which was received as a secured creditor. The bank credited the bankruptcy proceeds of $15,365.25 among the three promissory notes as follows: The first note, $3,602.98; the second note, $4,029.01; and the third note for $9,005, not endorsed by Huey, was paid in full.
Although the bank sought $55,964.30 as a secured creditor in Sav-Rite's bankruptcy proceeding, only $12,500 was found to be secured with priority over other creditors of Sav-Rite. The difference remaining was considered by the Trustee in Bankruptcy to be unsecured and without priority because the bank had not filed its financial statement with the Secretary of State, thereby failing to put third party creditors on notice of the bank's security interest in the inventory, furniture and appliances of Sav-Rite in Claiborne County. The bank now seeks to hold Huey personally liable for $46,904.83 still owing it on the two notes personally endorsed by him.
Huey first contends the court erred in permitting the jury to carry the exhibits into the jury room following the bank's case in chief and prior to submitting it for a verdict. He relies upon Mississippi Code Annotated section 11-7-151 (1972), which provides, "All papers read in evidence on the trial of any cause may be carried from the bar by the jury" which he argues was clarified by Whittaker v. State, 169 Miss. 517, 142 So. 474 (1932). It was there held that permitting a map which had been read into evidence to be taken by the jury into its room when it retired to consider its verdict was not error. The present argument is that Whittaker, supra, precluded the perusal of exhibits prior to retirement for consideration of the verdict. We are presently of the opinion this was not error for the reason the defendant introduced *1008 several exhibits, as did the complainant, which were also taken into the jury room, and there is no testimony of any prejudice flowing from the incident. This leaves appellant's argument that this action was the equivalent of singling out the plaintiff's evidence thereby giving undue emphasis to it, without merit. Moreover, Whittaker, supra, as we read it, made no restrictions on permitting the jury to view evidence prior to retiring. Although we think better practice would suggest that exhibits be withheld from the jury room until the jury retires for a verdict, we find no prejudice and no error to the defendant under the present circumstances.
Huey next argues he was entitled to a directed verdict on the facts. He contends that after taking a security interest on the collateral of the corporate maker, the bank did not file a financing statement with the Secretary of State which resulted in the bank's holding an unperfected security interest in the collateral, thereby permitting the lien to become subordinate to the interest of the trustee in bankruptcy. Mississippi Code Annotated section 75-9-401 (1972) designates the office in which a security interest should be filed to give it the protection of the statute. Subsections (1)(b) and (c) provide:
(1) The proper place to file in order to perfect a security interest is as follows:
* * * * * *
(b) when the collateral is goods which at the time the security interest attaches are or are to become fixtures, or which thereafter become fixtures, then in the office where a mortgage on the real estate concerned would be filed or recorded under the real estate laws of this state; ...
(c) in all other cases, in the office of the secretary of state and in addition, if the debtor has a place of business in only one (1) county of this state, also in the office of the chancery clerk of such county, or, if the debtor has no place of business in this state, but resides in the state, also in the office of the chancery clerk of the county in which he resides.
The bank did not avail itself of subsection (c) in protecting its interest, but rather filed its financial statement with the Chancery Clerk of Claiborne County even though its collateral agreement included all furniture, appliances and fixtures owned by the maker. The protection of the statute was available to the bank which either overlooked or chose not to use it. This precipitates the contention that the bank had the duty to perfect its security interest to protect Huey, the endorser, because it required his endorsement before closing the loan. Section 75-3-606(1)(b), Impairment of recourse or of collateral, provides:
(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder.
* * * * * *
(2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
The security interest on the first note appears to be "all inventory of furniture and appliances." On the second note the security agreement covered "furniture and fixtures." Pursuant to the statutes cited, the security interest was not perfected. We therefore think the trial court erred in not directing a verdict for the defendant to the extent that the collateral had been impaired.
In Chrysler Credit Corp. v. Bank of Wiggins, 358 So.2d 714 (Miss. 1978), a loan by the bank was secured by "all shop equipment, tools, furniture, and fixtures, accounts receivable, office equipment, parts and inventory." The financing statement was filed with the Chancery Clerk but not with the Secretary of State. This Court stated the filing should also have been with the Secretary of State for the security interest to be perfected. However, because Chrysler, a third party creditor, had actual knowledge of the bank's security interest when it removed certain collateral contained in the security agreement, it was not entitled to the benefit of the statute. The Court cited Mississippi Code Annotated section 75-9-401(2):

*1009 (2) Except as provided in subsection (4B) of Section 9-313 [§ 75-9-313], a filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this chapter and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement. (emphasis added).
Presently, the filing with the chancery clerk was insufficient to secure the collateral, thereby permitting its impairment.
We find the case of First Bank & Trust Co., Palatine v. Post, 10 Ill. App.3d 127, 293 N.E.2d 907 (1973), persuasive to the above viewpoint. In it the Court on almost identical facts held that a lender by not filing a financing statement held only an unperfected security interest in collateral which was subordinate to the interest of the trustee in bankruptcy of the corporate borrower. The failure to file was held to be an unjustifiable impairment of collateral, thereby relieving the corporate officers of their obligations as personal guarantors of the indebtedness.
Somewhat similarly, the West Virginia Supreme Court of Appeals in Peoples Bank, Etc. v. Pied Piper Retreat, Inc., 209 S.E.2d 573 (W. Va. 1974), held that when the bank failed to perfect its security lien on some television sets used as collateral, it lost its priority, thus constituting an unjustifiable impairment to the endorsers of the note. In sum, we are of the opinion the bank's failure to file the financing statement with the Secretary of State, thereby permitting other creditors to gain priority, was an unjustifiable impairment.
The next assignment of error, related to the above, is that the trial court erred in not granting defendant's instruction D-4. It requested the court to rule as a matter of law, from uncontradicted evidence, that Huey was entitled to the defense of unjustifiable impairment to the extent that his recourse against the security had been destroyed by the bank's failure to file its financing statement with the Secretary of State. This contention is disposed of by that previously stated. However, the court amended the instruction from its original form and granted it. The amendment, however, resulted in the submission of two issues to the jury; namely, whether there was an unjust impairment and if so, to what extent.
We are of the opinion the issue of unjust impairment was a matter for the trial court's resolution arising from nonconflicting facts and the second was properly submitted to the jury. We stated in Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975): "The jury resolves conflict of fact the court resolves issues of law arising from nonconflicting facts." Although probably repetitious, the nonconflicting facts reveal the agreement concerning collateral consisting of inventory, furniture and appliances was not filed in accord with the provisions of Mississippi Code Annotated section 75-9-401(1)(c) (1972).
It is next contended the court erred in permitting the jury to consider testimony of the value of the collateral other than market value. We believe this contention to be correct under Mississippi Power Co. v. Harrison, 247 Miss. 400, 152 So.2d 892 (1963), wherein it is held the usual measure of value for loss or destruction of personal property is the market value. By analogy, we think the market value of the lost collateral, though not destroyed, would be the same. Indeed, the appellee cites no cases on point to the contrary; but rather argues that the value of collateral was more correctly determined by an invoice dated shortly before the first loan was made, and since the jury had before it this invoice price, the liquidation price in bankruptcy, as well as testimony concerning the fair market value at the time of the bankruptcy, consideration of values other than fair market value did not constitute error. We disagree with appellee's contention. It is true that the reasonable fair market value might be that found by the trustee in bankruptcy since that is the date the endorser no longer had *1010 recourse against the collateral; nevertheless, we have no method to determine whether or not this was relied upon by the jury.
The jury was allowed to consider several values on the collateral including the invoice price, the bankruptcy price, and the market price. The intermingling of these diverse values compounded by a determination of the legal question left to the jury, i.e., whether it should indulge unjust impairment as a defense, could have affected the verdict. However, given the perplexing intermix of the legal question and myriad values presented to the jury, it is impossible for this Court to discern what measure the jury employed in reaching its verdict.
Overall, we are of the opinion the cause should be reversed on the issue of the extent of unjust impairment to the collateral so that the amount of the endorser's discharge by impairment may be ascertained in accord with that which is stated in Bender's U.C.C. Service, Hart & Willier, Commercial Paper section 13.24(4) (1976), as follows:
Any discharge under subsection (1) of Section 3-606 is available only "to the extent" that the conduct affects the accommodation party's obligation. This can be fairly readily determined where the conduct affects collateral. The question is, what was the collateral worth of which the accommodation party was deprived or as to which his rights were otherwise diminished? If a holder releases or otherwise impairs the collateral so that it is no longer available to satisfy all or part of the obligation of the principal debtor, its value must be determined as of that time and subtracted from the accommodation party's obligation. He remains liable for that part of the debt due which is not adversely affected. If the value equalled or exceeded the debt, the discharge is total.
REVERSED AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.