930 So.2d 1281 (2006)
TRUSTMARK NATIONAL BANK, Appellant
v.
Loyd Dean BARNARD, Appellee.
No. 2004-CA-01342-COA.
Court of Appeals of Mississippi.
June 6, 2006.
*1282 J. Mark Franklin, III, R. Keith Foreman, Ridgeland, Lara E. Gill, for appellant.
Grady L. "Mac" McCool, III, C. Victor Welsh, III, Jackson, for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Loyd Dean Barnard brought a declaratory judgment action against Trustmark National Bank. Barnard alleged that he was damaged as a result of Trustmark's negligence in the administration of two loans. Trustmark filed a counterclaim for payment on the loans and attorney's fees.
¶ 2. The chancellor found both parties negligent. The chancellor ordered Barnard to pay $4,500 on the May note and to pay the full principal amount on the September note, plus statutory interest. The chancellor ordered Trustmark to clear the notes off Barnard's credit report, within ninety days of his satisfaction of the judgment. Finally, the chancellor ordered *1283 both parties to be responsible for their own attorney fees and court costs.
¶ 3. Trustmark appeals and argues the following issues:
I. The chancellor erred as a matter of law in granting equitable relief contrary to binding statutory authority.
II. The chancellor erred as a matter of law in granting equitable relief on the claim of collateral impairment without proof of impairment by the lender and without proof of damages.
Finding error, we reverse, render and remand.

FACTS
¶ 4. Barnard had a close friendship and a business arrangement with Clarence T. (Bo) Morgan, Jr., who owned a used car dealership named Easy Way Automotive in D'Lo. Barnard bought a lot of trucks from Morgan and Easy Way. Their usual arrangement, which had been done ten or twelve times, was for Barnard to buy a truck from Easy Way, finance it for six months through Trustmark, use it for six months, and trade it back to Easy Way for another truck before the loan came due or at the end of the term. Barnard used the trucks, and he repaid the loan, principal and interest, to Trustmark through the proceeds received when the truck was sold by Easy Way.
¶ 5. Here, we consider Barnard's purchase of three trucks through two promissory notes with Trustmark. This litigation commenced after Easy Way's check to Trustmark was returned for insufficient funds.
¶ 6. The chancellor's judgment made the following findings:
The Court further finds that Dean Barnard executed two notes to Trustmark National Bank, one dated May 18, 2000 in the sum of $59,500 plus interest, said note maturing on November 14, 2000 and further note dated September 12, 2000 in the sum of $21,555, said note maturing on March 13, 2001. At the time of the execution of said notes[,] security agreements in favor of Trustmark together with title applications [were]prepared by Easy Way on the first two vehicles and by Trustmark on the last vehicle.
The Court further finds that Trustmark National Bank likewise had a relationship with Easy Way and Clarence T. Morgan, Jr. That Loyd Dean Barnard was a lifetime friend of Clarence T. Morgan, Jr. and Loyd Dean Barnard's wife, Angie, worked for Easy Way and Morgan.
The Court further finds that during the course of business between Trustmark, Easy Way and Barnard that there had been approximately eight vehicles that Barnard purchased from Easy Way and financed through Trustmark. That Trustmark carried the floor plan for Morgan. Morgan, with the exception of one vehicle, purchased these vehicles for Barnard using his floor plan with Trustmark and later paying off the floor plan with proceeds from the loans that Barnard obtained through Trustmark.
The Court further finds that exception reports were issued to Trustmark National Bank in Magee from the central office in Jackson identifying problems with the titles on Barnard's vehicle and that as early as May of 2000 said exceptions were received in the Magee office concerning the vehicles purchased by Barnard from Easy Way.
The Court further finds that all parties were negligent in the handling of both of these notes.
The Court further finds that had Trustmark National Bank used due diligence regarding the note of May 2000 that the scheme of its other customer, Easy Way *1284 and Morgan, would have been caught much earlier and the resulting loss, if any, would have been stopped.
The Court further finds that had Barnard been more diligent in the September 2000 transaction and not relied on his friendship with Morgan that the loss concerning that vehicle by the non-receipt of the check from Ward would not have resulted.
The Court further finds that because of the failure of Trustmark to secure titles on the vehicles that were a part of the May 2000 note that was their statutory requirement, as well as their duty to their customer, that any damages that occurred, occurred due to their negligence. However, this Court further recognizes that as shown by the testimony, Barnard had the use of one of the vehicles for approximately six months and that to discharge this debt without some responsibility on the part of Barnard would be against all principles of equity. And therefore, as to this note, the Court finds that the same should be discharged with the exception of $4,500.
The Court further finds that the September 2000 note shall be the responsibility of Barnard in the amount of $21,555, less the amounts interpled into this Court and being held by this Court for payment to the rightful owners. And said judgment shall carry interest at the rate of 6 percent until fully satisfied.
The chancellor ordered Trustmark to remove the adverse credit reports if Barnard satisfied the judgment within ninety days. The chancellor also required the parties to pay their own attorney's fees and court costs.
¶ 7. We must examine the evidence surrounding the two notes.

A. May note
¶ 8. On May 18, 2000, Barnard purchased two trucks from Easy Way. Barnard planned to use the red truck for his personal use and to sell the green truck. Easy Way acted as title agent.
¶ 9. Barnard went to the Magee branch of Trustmark to take out a loan to fund the purchase of the trucks. Trustmark loaned Barnard the purchase price of $59,500, for a six month term. Barnard executed a security agreement, with both trucks serving as collateral for the loan. Barnard told his loan officer Pax Mogenson that he planned to use one truck and sell the other truck. Until Barnard decided which truck he would sell, Barnard wanted to pledge both trucks as collateral. Trustmark deposited the loan proceeds into Easy Way's account, which was at Trustmark.
¶ 10. Barnard asked Easy Way to sell the green truck on consignment. When the green truck disappeared off Easy Way's lot in May, Barnard began to ask his friend Morgan what happened to the truck. Morgan indicated that he sold it for exactly what Barnard owed on it and promised Barnard that he would forward the sale proceeds to Trustmark to pay off a portion of the May note. Morgan also indicated that he would "redo" the May note to reflect that it was now only secured by the red truck. In November, Barnard received a notice that the full amount of the note was still due. Barnard then learned that Morgan did not do what he had promised.
¶ 11. Barnard traded the red truck in to Easy Way on consignment, and Easy Way sold it. On December 8, 2000, pursuant to Easy Way's agreement with Barnard, Easy Way prepared a check payable to Trustmark in the amount of $62,659.21 to satisfy the May note. Barnard picked up the check and took it to Trustmark. Trustmark was aware that Barnard was *1285 presenting an Easy Way check in satisfaction of his May note. Trustmark's officer, Mogenson, also knew that the Easy Way account had recent problems with overdrafts. On December 11, the Easy Way check was returned for insufficient funds. Neither Mogenson nor Barnard learned of this until after Morgan committed suicide on December 18, 2000.

B. September note
¶ 12. On September 12, 2000, Barnard purchased a third truck from Barry and Angela Atkins for $21,555. Trustmark again loaned Barnard the funds for the purchase price of this truck. The security agreement listed the Atkins' truck as collateral for the loan. Barnard presented the original title to Trustmark. Trustmark was the title agent; however, it was not until January of 2001 that Trustmark filed the title. By this time, the truck had already been sold to another person.
¶ 13. Morgan knew Barnard wished to sell the Atkins' truck. In November of 2000, Bernard put Morgan in contact with Charlie Ward, a used car dealer in Petal, who had an interested customer. Barnard told Mogenson about the potential sale. Barnard left the truck with Ward over the weekend.
¶ 14. On the following Monday, Ward told Barnard to consider the truck sold, and Ward would forward Barnard a check. Morgan, however, intercepted the check for the sales proceeds and never told Barnard, even though Barnard would ask him where the money was. It was not until after Morgan's suicide that Barnard found out that Ward paid the check to the order of Morgan, with the understanding that Morgan would give the money to Barnard.
¶ 15. Barnard filed a replevin action, which is still pending, against Ward to try to recover the Atkins' truck. He also participated in an interpleader action against Morgan's surety in order to recover the funds Morgan was supposed to send to Trustmark. As a result of the interpleader action, $12,495.14 was held by the court.
¶ 16. Because the May and September notes were delinquent or in default, Barnard received an adverse credit history. Barnard claimed that this prevented him from securing a mortgage.

STANDARD OF REVIEW
¶ 17. This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002). Legal questions are reviewed de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721(¶ 5) (Miss.2002).

ANALYSIS

I. The chancellor erred as a matter of law in granting equitable relief contrary to binding statutory authority.
¶ 18. Trustmark first argues that equity must follow the law. Trustmark asserts that the Uniform Commercial Code ("UCC") dictates that a maker cannot be discharged from a note. Barnard argues that the UCC is not controlling in this case. Rather, Barnard argues that Trustmark had a duty under the Mississippi Motor Vehicle and Manufactured Housing Title Law, Mississippi Code Annotated Sections 63-21-1, et seq., and under its own procedures to secure the vehicle titles. Barnard claims that failure to do so was negligent and contributed to the loss of the vehicles and entitled him to damages. The chancellor's final judgment does not state the statute, case or other authority upon which he relied to decide this case.
*1286 ¶ 19. Trustmark claims that the chancellor erred in finding that "because of the failure of Trustmark to secure titles on the vehicles that were part of the May 2000 note . . . any damages that occurred, occurred due to [Trustmark's] negligence." As a result, Trustmark argues that the chancellor granted Barnard a partial discharge of his obligations under the May note. Trustmark also claims that the chancellor found Barnard responsible for his loss under the September note but discharged him of his obligation to pay interest and attorney's fees. Trustmark asserts that the chancellor ignored binding authority to discharge Barnard from his payment obligations under the note.
¶ 20. Mississippi Code Annotated Section 75-3-605(e) (Rev.2002) provides:
If the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an indorser or accommodation party having a right of recourse against the obligor is discharged to the extent of the impairment. The value of an interest in collateral is impaired to the extent (i) the value of the interest is reduced to an amount less than the amount of the right of recourse of the party asserting discharge, or (ii) the reduction in value of the interest causes an increase in the amount by which the amount of the right of recourse exceeds the value of the interest. The burden of proving impairment is on the party asserting discharge.
Trustmark argues that Mississippi law provides that the maker of a note is not entitled to discharge of his obligations because of impairment of collateral by the lender. Instead, under Section 75-3-605(e), only indorsers and accommodation parties, which Barnard was neither, can obtain a discharge of liability on a note upon a showing of impairment of collateral.
¶ 21. Barnard's liability on the Trustmark note was that of a maker. The maker has primary liability, and the obligation to pay is unconditional. Miss.Code Ann. § 75-3-412 (Rev.2002); see West Point Corp. v. New N. Miss. Fed. Sav. & Loan Ass'n, 506 So.2d 241, 244 (Miss. 1987). Trustmark could recover against Barnard and was not required to look to the collateral. Id. at 242-43.
¶ 22. According to Trustmark, Barnard's action is simply his effort to claim impairment of collateral as defense to payment of the May and September notes. Trustmark contends that such defense is not available to Barnard and is available "only to parties who are in a position of surety with respect to the instrument, and the defense is unavailable to the maker of a note." United States v. Vahlco Corp., 720 F.2d 885, 890 (5th Cir.1983) (quoting United States v. Unum, Inc., 658 F.2d 300, 304-05 (5th Cir.1980) (construing Texas version of UCC)).
¶ 23. Barnard counters by saying that the Uniform Commercial Code is not applicable. Instead, Barnard claims that the Mississippi Motor Vehicle and Manufactured Housing Title Law, Miss.Code Ann. § 63-21-3 governs the resolution of this action. Barnard argues that "Miss.Code Ann. [§] 75-9-104(c) excludes liens given by statute, which is exactly the purpose of Miss.Code Ann. § 63-21-1, et seq., from the provisions of the secured transactions chapter of the Uniform Commercial Code." The problem with this argument is that section 75-9-104(c)[1] provides that the Uniform Commercial Code does not apply to a lien, other than an agricultural lien, given *1287 by statute or other rule of law "for services or materials." Motor vehicles would not be included in that exclusion. Barnard's principal argument is that the Motor Vehicle Title Law, not the Uniform Commercial Code, is the exclusive means for protecting security interests in automobiles. Memphis Bank & Trust v. Pate, 362 So.2d 1245, 1247-48 (Miss.1978); Miss. Code Ann. § 63-21-55 (Rev.2004).
¶ 24. We disagree with Barnard and agree with Trustmark. Accordingly, we reverse and render, finding that the chancellor applied an erroneous legal standard. Because this is an action on the note, the Uniform Commercial Code controls. If this were an action to determine who had priority as to the collateral, Barnard's argument may have merit.
¶ 25. In this case, the testimony indicated that Easy Way prepared the title applications as the designated agent on the trucks covered by the May note. Barnard took delivery of the trucks and immediately instructed Morgan to resell one of them. Morgan sold the truck but did not account for the sale proceeds to Barnard. Barnard retained the second truck and used it for several months before trading it in with Morgan and Easy Way. Shortly after purchasing the third truck, through the September note, Barnard turned the truck over to a third party for resale. Barnard did nothing to protect himself or his interest in the proceeds from that sale. Barnard, rather than Trustmark, delivered the truck for resale.
¶ 26. The security agreement required Barnard to use reasonable care to protect and preserve the collateral in his possession. Through his agents, Barnard sold the trucks without remitting the proceeds to Trustmark as required. Barnard was an active participant in the impairment of the collateral. The chancellor found Barnard negligent. His participation bars any equitable relief, and Barnard remains primarily liable for payment on the note. Miss.Code Ann. § 75-3-412; Miss.Code Ann. § 75-3-605(i); see West Point Corp., 506 So.2d at 244-45. Accordingly, we reverse and render the chancellor's finding that the May note should be discharged. We remand for the chancellor to calculate the proper amount owed and enter a judgment for interest and attorney's fees due under the notes.

II. The chancellor erred as a matter of law in granting equitable relief on the claim of collateral impairment without proof of impairment by the lender and without proof of damages.
¶ 27. Trustmark argues that (1) there was no evidence that it was negligent, and (2) there was no proof of impaired value. Barnard maintains there was substantial credible evidence to support the judge's findings.

A. Was there evidence that Trustmark was negligent?
¶ 28. Trustmark challenges one specific fact finding, which it states was the "primary" basis of the chancellor's ruling that it was negligent on the May note for failing to catch on to Easy Way's scheme and prevent loss to Barnard. The trial court found, "[t]hat Trustmark carried the floor plan for Morgan. Morgan, with the exception of one vehicle, purchased these vehicles for Barnard using his floor plan with Trustmark and later paying off the floor plan with proceeds from the loans that Barnard obtained through Trustmark." Three paragraphs later, the chancellor found "[t]hat had Trustmark National Bank used due diligence regarding the note of May 2000 that the scheme of its other customer, Easy Way and Morgan, would have been caught much earlier and the resulting loss, if any, would have been stopped."
*1288 ¶ 29. Trustmark argues that there was no evidence that the two trucks, purchased by the May note, were on its floor plan. Therefore, Trustmark argues it had no duty to use due diligence to detect the scheme of Easy Way. We agree.
¶ 30. Angie Barnard testified that Trustmark was the only bank with whom Easy Way had a floor plan. She explained that a "floor plan" means that Trustmark financed Easy Way's inventory. Trustmark's usual practice with a floor-planned dealership was to check on its inventory every four weeks to make sure the dealership was accurately reporting its sales and paying its inventory loan. With Easy Way, Trustmark only did this every four or six months. However, neither Angie nor any other witness stated that these particular trucks were purchased with Easy Way's floor plan. Because there is no evidence to support the finding that the trucks were on the floor plan, Trustmark did not have a duty to inspect Easy Way's inventory for these particular trucks.

B. Was there evidence of damages?
¶ 31. Trustmark also claimed that Barnard offered no evidence as to the value of the collateral that he alleges that Trustmark impaired or any of the other elements of Barnard's damages. Barnard's brief does not even address this issue.
¶ 32. Discharge is available only to the extent of the collateral's impairment. Huey v. Port Gibson Bank, 390 So.2d 1005, 1010 (Miss.1980). The supreme court explained:
If a holder . . . impairs the collateral so that it is no longer available to satisfy all or part of the obligation of the principal debtor, its value must be determined as of that time and subtracted from the . . . obligation. He remains liable for that part of the debt due which is not adversely affected. If the value equaled or exceeded the debt, the discharge is total.
Id. The value that must be determined is the collateral's fair market value. Id. at 1009.
¶ 33. In Huey v. Port Gibson Bank, the court held that the bank impaired the value of the collateral when it failed to perfect its security interest in the collateral. Id. at 1008. As a result, the bank lost its priority in the debtor's bankruptcy and therefore was not able to recover as much of the bankruptcy proceeds. Id. at 1007. On the question of value, the jury was presented with evidence of invoice price, bankruptcy price and fair market value. Id. at 1010. The case was remanded on the issue of damages so that the jury could only consider fair market value in determining the extent of discharge. Id.
¶ 34. Here, no evidence was presented as to the fair market values of the trucks, when they were respectively sold without Trustmark having perfected its liens or secured the titles. The party seeking discharge of the obligation has the burden of proving the extent of impairment. Miss. Code Ann. § 75-3-605(e)-(f) (Rev.2002). Therefore, we find that there was no substantial credible evidence to support the chancellor's award of partial discharge.
¶ 35. Nevertheless, Barnard asserts that damages are presumed in cases where a bank negligently or intentionally causes damage to a depositor's credit history. Bernard points to Grenada Bank v. Lester, 126 Miss. 442, 89 So. 2 (1921) for this proposition. However, in Grenada Bank, the court held that such damages may be inferred when a bank wrongfully dishonors a check. Id., 126 Miss. at 442, 89 So. at 3. This is not a case of wrongful dishonor. This is a case where Trustmark is alleged to have negligently impaired the collateral securing a promissory note. Because Barnard did not prove Trustmark impaired the collateral, the full amount of the note *1289 remained due. The credit report which reflected this information was therefore accurate.
¶ 36. We reverse and render the partial discharge granted to Barnard.

CONCLUSION
¶ 37. For these reasons, we reverse and render judgment in favor of Trustmark. We remand for the chancellor to determine the amount due under the notes, including all principal, interest, attorney's fees and costs.
¶ 38. THE JUDGMENT OF THE CHANCERY COURT OF SIMPSON COUNTY IS REVERSED, RENDERED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] In the 2002 revisions to the Mississippi Uniform Commercial Code, the exclusion of section 75-9-104(c) was moved to Miss.Code Ann. § 75-9-109(d)(2).